CASE 27.—ACTION BETWEEN C. C. CHRISTOPHER AND THE COLUMBIA TRUST COMPANY, TRUSTEE, AND OTHERS.—March 23, 1909.

# Columbia Trust Co , &c.
# v. Christopher

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

From the judgment the Trust Co., &c., appeal—Affirmed.

1. Wills—Construction—Powers.—A will devised property to testator's widow and mother, provided that the mother's share should be held in trust for her use for her life; that on her death the use of such share should pass to the widow; that, if the widow elected to establish or aid a benevolent institution, etc., with part of her devise, the mother's share should be paid by the trustee to such institution; that, if the widow failed to elect to establish or aid such institution, the mother's share should be divided between specified associations. The widow, the mother, and her husband, the executors, the testamentary trustee, and the trustees of the specified associations deeded the property to appellee, and afterwards the wife executed a writing to appellee, agreeing that, if she thereafter elected to aid or establish an institution, she would so establish it that it could not interfere with appellee's interest Held, that the will gave the widow a power appendant of appointment and coupled with an interest, so that the conveyance passed the whole estate in the property, and that it was not subject to be avoided by the establishment by the widow of an institution.

2. Contracts — Consideration. — The probability of appellee recovering from the widow and from the trustee a part of the purchase money paid for the land, and of his defeating notes given for the unpaid purchase price, if the conveyance did not pass good title to him, was sufficient consideration for the widow's agreement.

3. Powers—Rights of Purchaser.—Even if the conveyance did not pass good title, equity would not permit any institution established by the widow to disturb appellee, and especially when it had received the proceeds of the property from the trustee which were directed to be paid over to it when established.

4. Powers—Nature.—Powers are either collateral or such as relate to an estate or interest given by the donor to the donee.

5. Powers—"Collateral Power"—Nature.—A "collateral power" is a bare power given to a mere stranger, who has no interest in the estate or property to which the power relates.

6. Powers—Appendant or in Gross—Nature—"Power Appendant" —"Power in Gross."—The power relating to an estate or interest given the donee may be either appendant or in gross being a "power appendant" when the exercise of the power overreaches, affects or destroys the donee's interest, and being a "power in gross" when the estate created by the power is beyond and does not affect the estate of the donee.

7. Powers—Nature.—The distinction between collateral powers and such as relate to an estate or interest given by the donor to the donee of the power is chiefly important respecting the extinguishment or suspension of such powers by the donee.

8. Powers—Suspension or Destruction.—A mere collateral power can not be extinguished or suspended by the donee; but all powers other than powers collateral and powers coupled with a trust or duty may be suspended or destroyed, either wholly or in part, by the donee, and the rule applies where the donee is confined or limited in his choice to certain classes of individuals or to certain institutions.

9. Powers—Suspension or Destruction—Method.—Powers not merely collateral, and not coupled with a trust or duty, may be released, extinguished, or suspended by express agreement, or by implication, and any dealing with the property inconsistent with the exercise of such power will operate as an implied release or extinguishment of the power.

BROWDER & BROWDER for appellee.

CASES CITED.

Knox v. Jones, 47 N. Y., 389; Tilden v. Green, 130 N. Y., 29; s. c. 27 Am. St. Rep., 487; Levy v. Levy, 33 N. Y., 107; Pritchard v. Thompson, 95 N. Y., 76; Holland v. Alcock, 108 N. Y., 312; Read v. Williams, 125 N. Y., 560; Thorington v. Thorington, 82 Ala., 489; Norris v. Thompson's Ex'ors, 19 N. J. Eq., 307; Ruggles v. Tyson, 104 Wis., 500; West v. Berney, 1 Russell & Mylne, 471; Bristow v. Shirrow, 27 Beaven's Rep., 585; Dickinson v. Teasdale, 1 De

Gex, Jones & Smith, 60; Farwell on Powers, page 8; Sugden on Powers, pages 82, 893; Bird v. Christopher Style's Rep. K. B., 389; Smith v. Death, 5 Maddox, 371; Willis v. Sharral, 1 Atkyn's Rep., 474; Atkinson v. Dowling, 33 Sou. Car., 414.

TRABUE, DOOLIN & COX for appellants.

### QUESTIONS OF LAW DISCUSSED.

These questions may be enumerated as follows:

1st. Does the will create a power of appointment in the testator's widow as the lower court held, or is the outstanding interest a mere contingent remainder interest at common law?

If there is no power of appointment in the will, then we may disregard all the learning with reference to powers appendant and powers in gross and deal with this case as simply presenting a case of contingent remainder at common law.

2nd. If the will creates a power of appointment, is it a power appendant or a power in gross?

3rd. If the will creates a power of appointment, either appendant or in gross, can such power, whether appendant or in gross, be extinguished by any act of the donee of the power?

4th. Has the donee of the power, in this case the widow, done any act which under any recognized principle of equity amounts to such an extinction or release of her power of appointment as will cut off the claim or an institution to be hereafter established or aided by her of the kind and in the manner set forth in the will?

5th. What effect in this case should be given to the policy of Kentucky law as expressed in Section 2346, 2347, Ky. Statutes, intended to preserve contingent remainders from destruction as modified by Section 4845, Ky. Statutes, with respect to powers exercised by will only?

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In the month of October, 1900, appellee, Christopher, and one John Hill Eakin, both of Nashville, Tenn., became the owners of 3,008 acres of land situated in Muhlenberg county, Ky. It is not stated in the record what interest each owned in the land; but it has been treated by counsel for the parties as if each owned an undivided half. It appears that John Hill Eakin, in the month of July, 1902, made and executed his last will and testament, that he died in the latter part of the year 1903, and that his will was duly probated in the month of January, 1904. The

provisions of the will with reference to the matter in controversy, and which it is necessary to construe, are contained in item 3, which is as follows:

"I desire that the remainder of my estate, real, personal and mixed, be equally divided between my wife and my mother. The portion herein devised to my mother is to be held by the Nashville Trust Company, of Nashville, Tennessee, for her sole and separate use, and the income arising from same to be paid her quarterly during her life, and at her death to be distributed as follows, viz.: Should my wife elect to establish or aid an already established benevolent or charitable or eleemosynary institution with the larger portion of the estate herein devised to her, then and in that event the portion of my estate devised to my mother is to be paid over at her death by the Nashville Trust Company, trustee, to the institution above mentioned at such time as my wife may elect to make the donation of her estate, but until such donation is made the Nashville Trust Company, trustee, will pay the income after my mother's death to my wife. Should, however, my wife not elect during her lifetime or at her death to establish or aid any institution above mentioned, then at her death the portion of the estate devised to my mother to be held in trust for my mother's benefit shall at my wife's death be paid over equally to the Young Men's Christian Association and to the First Presbyterian Church, both of Nashville, Tennessee."

He named his mother, Louise P. Evans, and his wife, Elizabeth R. Eakin, as his executrices, without bond. It appears that appellee, C. C. Christopher, on the 7th day of September, 1905, purchased the undivided half interest in the survey of land referred to,

that was owned by the late John Hill Eakin, and received a conveyance of the title thereto from Elizabeth R. Eakin, and Elizabeth R. Eakin and Louise P. Evans as the executrices of John Hill Eakin, and from Louise P. Evans and Thomas Evans, her husband, the trustees of the First Presbyterian Church, and the Young Men's Christian Association, both of Nashville, Tenn., and the Nashville Trust Company, trustee for Louise P. Evans. Appellee paid $16,000, of the purchase price and executed his notes for the balance, with a lien retained upon the land for their payment. In the month of November, 1906, appellee and one of the appellants, Murphy Land Company, entered into an agreement by which the land company agreed to loan appellee the sum of $18,000, with which the purchase money lien was to be satisfied. This $18,000 loan by the land company was to be paid by appellee in eight equal installments; the first payable in one year; the second in two years, and so on until it was paid, with 5 per cent. interest. It appears that after this agreement was entered into appellant Murphy Land Company became doubtful of its power under its charter of the State of Tennessee to loan money and take a mortgage upon real estate situated out of that State, and negotiations were entered into between it and the other appellant, Columbia Trust Company, and it agreed to accept the mortgage on the real estate in Kentucky and act as trustee for its coappellant, Murphy Land Company. Appellee, with his wife, then duly executed a mortgage conveying the whole 3,008 acres of land to the Columbia Trust Company, trustee, of the city of Louisville, to secure the loan of $18,000 on the terms stated. The mortgage was recorded,

and all the papers necessary to carry out the contract were executed.  In fact, the whole thing was completed, except the payment of the $18,000 to appellee.  It appears that at that time appellants became doubtful of appellee's title to one-fourth of the land described; that is, to that portion that was willed by John Hill Eakin to his mother for life, and in the event his wife elected to establish a benevolent, charitable, or eleemosynary institution, with the larger portion of the estate devised to her, then that portion devised to his mother should go to such institution established by his wife, instead of to the Presbyterian Church and the Young Men's Christian Association, and for this reason alone refused to complete the contract by paying the $18,000 to appellee.  It appears that the mother, Mrs. Evans, and her husband, have both died.

The contention of appellants' counsel, in substance, is that her conveyance to appellee does not have the effect to prevent her from hereafter establishing a benevolent, charitable, or eleemosynary institution as referred to in the will; that as such institution is not now in being, and consequently not before the court in this action, there would be nothing to prevent it, after being established, from suing and recovering one-fourth of the land in controversy under the provisions of the will of John Hill Eakin.  They have presented this contention by oral argument and in their briefs with great ability.  We deem it unnecessary to discuss all the reasons presented for a reversal of the judgment.  It would extend this opinion to an unreasonable length.  Therefore, we present, in as succinct a manner as possible, our reasons why the conveyance to appellee is valid and passes the whole estate in the land to him.

It will be noticed that the share devised to the mother for life was, after her death, to pass to the wife for life, or rather the income from it. It was willed to the Nashville Trust Company to be held by it for the mother and wife. The testator named the remaindermen, the First Presbyterian Church and the Young Men's Christian Association, of Nashville; but by the same clause of the will he gave his wife power to defeat them, by providing that, if his wife should elect to establish or aid a benevolent, charitable, or eleemosynary institution with the greater portion of the estate devised to her, then and in that event the portion devised to his mother for life was directed to be paid over by the Nashville Trust Company to the institution so established or aided, at such time as his wife might elect to make the donation of her estate. It is clear from the testator's will that it was exclusively within the power of his wife as to whether she would or would not establish such an institution. If she did so, by virtue of that act, she necessarily controlled and directed that that part of the estate willed to his mother should go to the institution established by her. It was at her election to create the institution, and not in any sense the testator's. She was not required to do this; but it is perfectly clear that she had the power, under the will, to defeat the claims of the First Presbyterian Church and the Young Men's Christian Association by doing the act described in the will—i. e., by giving the greater portion of the estate devised to her by her husband for the purpose of establishing one of the institutions named in the will. This, in our opinion, was the creation of a power of appointment in her.

In the case of Dudley v. Weinhart, 93 Ky. 401, 20 S. W. 308, 14 R. 434, it appears that the testator, after having provided for his wife and granddaughter in his will, provided for the families of his brother and half-brother and for certain nieces and nephews of his wife. The devises to his wife and granddaughter were absolute; but by item 9 of his will he gave his wife power, within a stated time, to change or cancel any or every gift or devise made by the will, and described the formalities by which she could do this. She performed this act as designated in the will and defeated the remaindermen. In the opinion this court said: "Now, a general power of appointment is a power given by the maker of a deed or will, called the donor of the power, to another person, called the donee of the power, in the name of and by the authority of the donor, to create a new estate in any one out of the estate of the donor without divesting any estate previously granted or devised subject to such power or by divesting an estate previously granted subject to such power and bestowing on another person. Such power has always been exercised and held valid as being the will of the donor of the power, and not as a revocation or destruction of his will, in the sense of the statute supra; for it is perfectly competent for a testator to give another person the power to dispose of his property according to his own judgment and discretion. In such case the will and discretion of such person would be the will of the testator. If the testator had devised some estate to certain persons, subject to be divested or defeated, and its destination changed by the exercise of a power given to another person, the exercise of such power

would be the will of the testator; for he may attach conditions to the devise, the happening of which will defeat it, and defeating the devise upon such conditions that the donee of the power might thereafter present is the same as if the testator had inserted in the will the identical conditions as a defeasance of the present estate.'' To the same effect are the cases of McCullough's Adm'r v. Anderson, 90 Ky. 126, 13 S. W. 353, 9 R. 939, 7 L. R. A. 836, and Lillard v. Robinson, 3 Litt. 415.

We cannot better elucidate the questions involved than by copying an extract from the opinion of the learned chancellor who tried the case in the lower court. We quote therefrom as follows:

''By the third clause of the will of J. Hill Eakin the testator devised the remainder of his estate, not previously disposed of, to his wife and to his mother. It is provided that the share devised to the mother shall be held by the Nashville Trust Company for her sole and separate use during her life. After the death of the mother the share willed to her, or rather the use of it, is given to the wife for life, it being provided, however, that if the wife should elect to establish or aid a benevolent or charitable or eleemosynary institution with the larger portion of the share devised to her, then and in that event the portion devised to the testator's mother for life, and after her death to the testator's wife, is to be paid over by the Nashville Trust Company to the institution so established or aided at such time as the wife may elect to make the donation of her estate. After the death of the mother, and until such donation is made, the Nashville Trust Company is directed to pay the income to the testator's wife. The clause in question

not only gave the wife an interest after the death of
the testator's mother in the share devised to his moth-
er, but it also clearly gives to the wife the power to
give said share to a benevolent, charitable, or elee-
mosynary institution, provided she should first give to
such institution the larger portion of the share first
given by the testator to her in fee. This was beyond
doubt a power. The testator, J. Hill Eakin, is the do-
nor of the power. The testator's wife is the donee. The
property affected by the power is that one-half of the
testator's residuary estate which was given by the
testator to his mother for life, and after the mother's
death to the testator's wife, with the power above
mentioned attached thereto. See Bristow v. Shirrow,
27 Beav. 585. In the case cited the testator devised his
estate to the same persons to whom his wife should
devise her residuary estate. This was held to vest
in the testator's wife a testamentary power of ap-
pointment. It is clear that, under the clause in ques-
tion, the testator's wife might select a benevolent
or charitable or eleemosynary institution by making
the donation provided for in her lifetime, or by mak-
ing such donation by will at her death. The power
was special, however, inasmuch as the donee was
confined to benevolent, charitable, or eleemosynary
institutions. She could not give the estate to any
person, nor to any institution except of the kind
mentioned.

"Powers are either collateral or such as relate to
an estate or interest given by the donor to the donee
of the power. A collateral power is a bare power
given to a mere stranger, who has no interest in the
estate or property to which the power relates; e. g.,
a power of sale given to executors, or a power of

appointment such as was given by the testator to his wife in Bristow v. Shirrow, 27 Beav. (Rolls Court) 585. 'A power collateral is of the nature of an authority to deal with an estate, no interest in which is vested in the donee of the power. A power of that kind is wholly different-from an estate or interest, and can not without abuse of language be so designated.' Dickinson v. Teasdale, 1 De Gex, J. & S. 60; Farwell on Powers, p. 8. A power relating to an estate or interest given by the donor of the power of the donee may be either appendant or in gross. The distinction between collateral powers and such as relate to an estate or interest given by the donor to the donee of the power is chiefly important with respect to the extinguishment or suspension of such powers by the donee. A power is appendant when the estate created by the execution of the power overreaches, affects, or destroys the interest of the donee. It is in gross when the estate created by the execution of the power is beyond and does not affect the estate or interest of such donee. Thus a power of appointment by will given to a tenant for life is in gross. The execution of such a power does not affect the life estate of the donee of the power. A power of sale given to a life tenant is, however, appendant because the execution of such a power overreaches, affects and destroys the interest of the donee. A power simply collateral cannot be extinguished or suspended by any act of the donee. Farwell on Powers, p. 11; West v. Berney, 1 R. & M. 434; Willis v. Shorral, 1 Atk. 474; Sugden on Powers, 893.

"Such a power is not in the nature of a right or interest in the donee thereof, and is given, or supposed to have been given, for the benefit of some third per-

son. Thus, if a testator gives to his wife power to dispose by will of any fixed portion of his estate among certain named individuals or institutions, giving her at the same time no interest in the property so to be disposed of, the wife would, in such case, have simply a collateral power. She would have no interest whatever in the property, and could not by any act or agreement extinguish such power in herself or bind herself not to execute it. Such power is indestructible in its nature, and, of course, every power coupled with a trust or duty is likewise indestructible. The execution of such last mentioned power is imperative on the donee, and it would be a breach of trust for the donee to undertake not to execute the power. All powers, however, other than powers collateral and powers coupled with a trust or duty, may, be suspended or destroyed, either wholly or in part, by the donee thereof. Farwell on Powers, p. 15; Sugden on Powers, p. 82; Coke's Littleton, p. 265; Bird v. Christopher, Stiles, 389; Albany's Case, 1 Co. Rep., 110; Noel v. Henry, McCle. & Yo. 302; West v. Berney, 1 R. & M. 431. This rule applies also to those cases in which the donee of the power is confined or limited in his choice to certain classes of individuals or to certain institutions. Smith v. Death, 5 Mad. 371; King v. Melling, 1 Vent. 225; Coffin v. Cooper, 2 Dr. & Sm. 365; Bickley v. Guest, 1 R. & M. 440. In Smith v. Plummer, 17 L. J. Ch. 145, certain property was settled on the husband and wife sucessively for life, and after their death to their children, as they should by deed jointly appoint, and, in default of such an appointment, as the survivor should by deed or will appoint. No appointment was made by deed

during the joint lives of the husband and wife. The wife died, and the husband, being the survivor, had a life estate and power to appoint by deed or will, according to the terms of the original settlement. In 1842 the husband released his power by deed. Afterwards, in 1843, he made a will purporting to exercise the power. As he was in the first instance given an interest for life in the property, to which was attached a power, the court held that he could by deed or contract bind himself not to execute the power, and that his release of it in 1842 was valid and binding, and the will subsequently made in exercise of the power was held to be inoperative. Such powers as are not merely collateral and such as are not coupled with a trust or duty may be released, extinguished or suspended by express agreement or by implication. Any dealing with the property inconsistent with the exercise of such power will operate as an implied release or extinguishment of the power. Hurst v. Hurst, 16 Beav. 372; Davies v. Huguenin, 1 H. & M. 730; Isaac v. Hughes, 9 Eq. 191; Green v. Green, 2 Jones & L. Ch. 529; Re Chambers, 11 Ir. Eq. 518; Cunningham v. Thurlow, 1 R. & M. 436; Smith v. Houblon, 26 Beav. 482; Boyd v. Petrie, 7 Ch. 385; Young v. Roberts, 15 Beav. 558.

"It was provided by act of Parliament in England January 1, 1882, that even collateral powers might be extinguished or suspended by the act of the donee, so that now in all the countries in which that act applies the donee of any power, except such as is coupled with a trust or duty, may suspend or extinguish the same by express agreement or by implication. In this State, however, I take it the rule is the same as it was in England prior to January 1, 1882. As

heretofore stated, the rule as it then existed permitted the donee of the power, which related to property an interest in which was given to the donee, to extinguish or suspend the power by express agreement or by implication. All powers other than powers collateral and powers coupled with a trust or duty, may be suspended or destroyed, either in whole or in part, by the donee thereof. The power given by the third clause of the will of J. Hill Eakin to his wife over the moiety or his residuary estate, which was devised to the testator's mother for life, and after her death to the testator's wife, subject to the power above mentioned, was clearly not a collateral power, nor was it a power coupled with a trust or duty. It was a power which related to an estate or interest given by the donor to the donee of the power, and it was appendant because its execution would affect or destroy the interest of the donee. Such a power the donee clearly had the right to release or extinguish, and this she has done, both expressly and by implication. The deed to Christopher, in the first instance, was clearly an implied release of the power. It was a dealing with the property in question inconsistent with a subsequent execution of the power. The general principle is that it is not permitted to one to defeat his own grant. One may not so deal with the estate over which he has a power, other than a power collateral or a power coupled with a trust or duty, as to create interest inconsistent with the exercise of his power. West v. Burney, 1 R. & M. 431.

"I think the title of Christopher is good and sufficient, and that the demurrer to the petition should be overruled."

It further appears in the record that, after the deed was executed, Mrs. Eakin, the widow, executed another writing to appellee by which she obligated herself, in effect, that, if she thereafter elected to aid or establish one of the institutions named in the will, she would so establish it that it could not interfere in any way with the one-fourth interest in this land. Appellants' counsel contend, first, that this writing was executed without consideration, and therefore was not binding; second, that it did not have the effect to change the situation and obligations already existing. We differ with counsel on the first contention. There was a sufficient consideration to uphold the agreement. If the conveyance which was executed did not pass to appellee a good title, there was a probability of his recovering from her and the Nashville Trust Company that part of the purchase money paid for the land and of his defeating the collection of the notes given for that part of the purchase price unpaid. The trust company, under the terms of the will, held one-half of the cash paid and owned, a half interest in the notes, and she owned the other halves. We will not discuss the second proposition, as we have already determined that appellee received a good title by reason of the conveyance.

It will be noticed that the will provides that the Nashville Trust shall hold the one-half interest devised to the mother for life for her benefit, and upon her death for the benefit of the widow for life, and at her death the trust company is to pay it over to the First Presbyterian Church and the Young Men's Christian Association, provided the widow does not elect and establish one of the institutions named in the will, in which event the trust

company should turn over to such institution that portion of the testator's estate in its possession. Our opinion is, under these facts, even though we are in error when we say that appellee has a good title by reason of the conveyance, no court of equity would permit the institution, when established by Mrs. Eakin, to disturb appellee in his title and possession of the property in controversy, or any part of it. If Mrs. Eakin, notwithstanding the convey-ance and in violation of her obligation assumed in the separate writing, should establish such an institution without protecting the right of appellee in the land, no court of equity, in our opinion, should permit the institution created by her to disregard the obligations of its creator and disturb this convey-ance, and especially when it had received the proceeds of the land from the Nashville Trust Company, the trustee named by the testator, Eakin, which were directed to be paid over to it when established.

For these reasons, the judgment of the lower court is affirmed.