JOHN BETZ *et al.* Defendants in Error, *vs.* LAURA FAR-
LING *et al.* Plaintiffs in Error.

*Opinion filed June 22, 1916.*

1. WILLS—*when remainder to children of the testator's daugh-
ter is contingent.* Where the testator gives certain land to his
wife for life, with remainder for life to the testator's son and
daughter in equal shares, the survivor to take a life estate in the
other's share if the other dies childless but the fee to go to the
children of the son and daughter surviving them, the remainder
to the son and daughter becomes vested at the death of the wife,
whom they survive, and if the son subsequently dies leaving chil-
dren the fee in the undivided one-half of the land vests in them,
but as long as the daughter lives the remainder to her children is
contingent, since if they predecease her the remainder will go to
the children of the son who survived him at his death.

2. PARTITION—*a contingent remainder is not subject to parti-
tion.* A contingent remainder-man is not a tenant of any estate
either in possession or remainder but has only a possibility of an
interest, and such possibility is not, of itself, subject to partition.

3. SAME—*right to partition where there is a contingent remain-
der in undivided one-half of land.* Where children of a deceased
son of the testator have the fee in an undivided one-half of cer-
tain land and a daughter of the testator has a life estate in an
undivided one-half of the same land, her children having a con-
tingent remainder in her one-half, which will become a fee if they
survive her, the children of the deceased son are entitled to parti-
tion, and, if the premises cannot be divided without manifest preju-
dice to the rights of the parties in interest, to have the same sold
and the proceeds divided.

4. SAME—*when unborn persons will be bound by decree.* Un-
der the Partition act, which is in accordance with the doctrine of
representation, if there are contingent remainder-men in being who
are made defendants to the bill and whose interests are identical
with any contingent remainder-men who may thereafter come into
being the latter are bound by the decree.

5. SAME—*section 32 of Partition act does not require consent
of owner of life estate in an undivided interest.* Section 32 of the
Partition act, authorizing the sale of a life estate, with the remain-
der, upon the filing of the written consent of the owner of the life
estate, contemplates a life estate in the whole or some definite part
of the premises, and no consent to a sale is required where the life
estate is in an undivided portion of the premises.

6. SAME—*correct practice where land in which there is a life estate and contingent remainder is sold.* Where the complainants in a partition suit have a vested interest in fee in an undivided one-half of the land and there is a life estate with a contingent remainder in the other undivided one-half, it is proper for the court, in selling the premises, to appoint a trustee to receive one-half the proceeds of the sale, invest the same and pay the income to the life tenant and at her death to bring the fund into court for distribution.

WRIT OF ERROR to the Circuit Court of Marshall county; the Hon. T. N. GREEN, Judge, presiding.

QUINN & QUINN, and CHARLES ·V. O'HERN, (FRED W. POTTER, guardian *ad litem,*) for plaintiffs in error.

BARNES & MAGOON, (WALLACE J. BLACK, of counsel,) for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

May Lowden Betz, one of the four children of Henry B. Lowden, with her husband, John Betz, filed a bill in equity in the circuit court of Marshall county for partition of four tracts of land in which she claimed an interest under the will of her grandfather, William D. Lowden, and made the other three children, and all persons having any present or future interest, defendants. The adult defendants were defaulted and a guardian *ad litem* was appointed for the infant defendants, and he filed an answer, to which a replication was filed. The cause was then referred to the master in chancery to take the evidence and report his conclusions of law and fact. The master made his report, and a decree was entered in accord with his conclusions, finding the interests of the parties and appointing commissioners to make partition. There was no question concerning a tract of 160 acres, the title of which was in the children of Henry B. Lowden, but their interest in the three remaining tracts was an undivided interest, and the chancellor by the

decree found the interests of all the parties in those tracts. The commissioners reported that the three tracts which are in controversy were not susceptible of division without manifest prejudice to the parties in interest, and the court entered an order of sale, which was executed by the master in chancery. Upon the report of the sale being filed, Rebecca Lowden Scholes, one of the defendants who had been defaulted and who had been found to have a life estate in an undivided one-half of the three tracts, appeared and entered her motion to vacate the order and decree of sale, the material grounds of the motion being that she had not consented to a sale of her life estate and that the parties entitled to the fee in remainder after her life estate could not then be ascertained. The motion was denied. She also moved to set aside the sale and objected to the same, but her exceptions to the report of the sale were stricken from the files. A writ of error was sued out of this court by the defendants, Rebecca Lowden Scholes, George Scholes, Jay Scholes, Mrs. Jay Scholes and Walter Scholes, who were interested in the undivided one-half of the three tracts.

The tracts of land in question were owned by William D. Lowden, who died on January 19, 1873, leaving a last will and testament, by which he devised the same as follows: "I give and devise to my wife, Nancy H. Lowden, [here follows a description of the three tracts in question, containing 76 acres, 20 acres and 27 acres, respectively,] to be used and enjoyed by her during the term of her natural life; and from and immediately after her decease I give and devise the same to my son and daughter, Henry B. and Rebecca Lowden, share and share alike, in case both shall be living at the time of their mother's decease, and if one of my said children shall decease before its said mother, then the whole of the same to such survivor in case the brother or sister deceased shall leave no issue of his or her body at the time of its said mother's death living, to be

used and enjoyed by them (my said children) during the term of their natural lives, and from and immediately after their decease I give and devise the same to the issue of their bodies, their heirs and assigns forever, and in case of failure of issue of the bodies of my said children, or either of them, then to the county of Marshall, in the State of Illinois, for the use of the inhabitants thereof, hereby meaning that a life estate in said lands after the decease of my said wife shall vest in my said children or the survivor, (the deceased being childless,) and after their death that the same shall vest immediately in fee simple in their children or the child. or children of either, the other leaving no child, and that they shall succeed each other in the other's life estate upon the decease of one childless, and upon their decease leaving no child or children or descendants of such child or children then to said Marshall county, as aforesaid."

Nancy H. Lowden, who was given a life estate, was afterward married to Harmon J. Adams, and died in 1905. The son, Henry B. Lowden, and the daughter, Rebecca Lowden, who was married to Walter Scholes, survived their mother. Henry B. Lowden died in 1907, and left a widow, Laura Lowden, since married to William Farling, and his children, the complainant May Lowden Betz and the defendants William B. Lowden, Leona Lowden and Nancy Lowden, his heirs-at-law. Rebecca Lowden Scholes is living and has two sons, George Scholes and Jay Scholes, both adults, and she is fifty-six years of age.

The findings of the decree were that the four children of Henry B. Lowden were entitled to one-half of the premises in fee simple, in equal parts; that Rebecca Lowden Scholes was entitled to a life estate in the other half, and that her children who should be living at her death would be entitled to that half in. equal parts. After these findings, however, the decree declared that the defendant Rebecca Lowden Scholes should be endowed of one full, equal

one-third part of the undivided half; that the children of Henry B. Lowden should each be endowed of the full, equal one-fourth part of the undivided one-half, and that the defendants George Scholes and Jay Scholes, and any other children that might be living at the death of Rebecca Lowden Scholes, should be endowed of the undivided one-half of the tracts, subject to the life estate of their mother, Rebecca Lowden Scholes. There is a misuse of the word "endowed" in the decree, and an evident error in declaring that Rebecca Lowden Scholes should be endowed of one full, equal one-third part of the undivided one-half, as well as the declaration of any present estate in George Scholes and Jay Scholes. Other parts of the decree, however, show that these were errors, and that it was intended that Rebecca Lowden Scholes should have a life estate in the undivided one-half with a contingent remainder in that half to any children who might survive her, with the further qualification that if she leaves no children the remainder will vest in the children of Henry B. Lowden.

William D. Lowden by his will devised a life estate in the land to his wife, with a remainder for life to his son and daughter, contingent upon their surviving their mother. They did survive her, and thereupon their estates for life became vested. The estate of each was for his or her own life, and there was a several devise after the decease of either of them to the issue of their bodies, their heirs and assigns forever. On the death of either leaving issue the remainder in his or her half would pass to such issue, and in default of issue surviving, the land was devised to the county of Marshall. The will provided that the children should succeed each other in the other's life estate upon the decease of one childless, which was impossible, because upon the death of one the other could not succeed to a life estate which terminated by the life tenant's death. The testator undoubtedly meant that upon the decease of one childless the other should succeed to a life estate in the

premises in which the deceased had a life estate. Henry B. Lowden having died leaving children, the undivided one-half of the lands became finally vested in them in fee simple, but it cannot now be known in whom the other half will finally vest. If Rebecca Lowden Scholes leaves children surviving her it will vest in them. If she leaves no children it will vest in the children of Henry B. Lowden. No interest in the land can vest in the county of Marshall, because the devise over to the county was to take effect only in case of the failure of issue of both the son and daughter, and as Henry B. Lowden left surviving children, the happening of the condition is impossible. The widow, Laura Lowden Farling, has no interest, for the reason that her husband, Henry B. Lowden, was not seized of an estate of inheritance but only of a life estate. The undivided one-half of the land belongs to the children of Henry B. Lowden in fee simple, and Rebecca Lowden Scholes has a life estate in the other half and the remainder in that half is contingent.

The plaintiffs in error contend that the land is not subject to partition for the reason that the persons who will take the fee cannot be determined until after the death of Rebecca Lowden Scholes; and that is true as to the undivided one-half devised to Rebecca Lowden Scholes and the issue of her body surviving her. It cannot be determined until her death in whom the remainder after her life estate will vest, and the remainder in that half is contingent and not subject to partition. (*Seymour* v. *Bowles,* 172 Ill. 521; *Ruddell* v. *Wren,* 208 id. 508; *Richardson* v. *VanGundy,* 271 id. 476.) Partition can only be made between co-tenants or joint tenants, and one who would be presently entitled to an estate if a contingency should happen has only a possibility of an estate, and is not a tenant of any estate, either in possession or remainder. It is not true, however, that the remainder after the life estate of Henry B. Lowden, which is now finally vested in fee simple in

the four children who survived him, is contingent in any sense and not capable of being separated from the undivided half in which the remainder is contingent. In the cases above cited the remainders in the whole estate were contingent, and partition could not be made which would finally determine the rights of any party nor the extent of the respective shares or interests, which is not the case here. Neither the existence of the life estate nor the fact that the fee is determinable on some future event will be an obstacle to a partition on the application of one in whom a remainder is vested and where the estate is of such a character that the court can determine the extent of the interest. (*Scoville* v. *Hilliard,* 48 Ill. 453; *Drake* v. *Merkle,* 153 id. 318; *Deadman* v. *Yantis,* 230 id. 243; *Askins* v. *Merritt,* 254 id. 92; *Cummins* v. *Drake,* 265 id. 111.) The Partition act contemplates that one having a vested interest may have partition so that his interest may be set off and be available to him, since it provides that every person who upon any contingency may be or become entitled to any beneficiary interest in the premises shall have his interest set forth, and where the share or interest is uncertain or contingent or the ownership or inheritance shall depend upon an executory devise or the remainder shall be contingent, so that the parties cannot be named, the same shall be stated in the bill, and if partition cannot be made without manifest prejudice to the owners, a sale thereof shall be made and the proceeds be divided according to the respective rights of the parties. The children of Henry B. Lowden had an estate in fee simple in the undivided one-half of the land not subject to any contingency and Rebecca Lowden Scholes had a vested estate for her life in the other undivided half, and both were estates in possession.

The fact that other children may yet be born to Rebecca Lowden Scholes who will survive her and become entitled to a share of the portion in which she has a life estate did not prevent the setting off of that portion in which such

274 – 3

after-born children might acquire an interest. The statute provides that those having uncertain or contingent interests who cannot be named in the bill shall be bound by the decree, and that is in accord with the doctrine of representation where there are parties having identical interests enabled to give effective protection to any who may be afterward born. George Scholes and Jay Scholes were made parties and had interests identical in character with any children that might be born afterward. All defenses that after-born children could make were available to those defendants, and it would not only be unjust but clearly contrary to the statute that the title of the four children of Henry B. Lowden should be postponed and they should have no right to the enjoyment of their separate shares until there should no longer be a possibility of a child being born to Rebecca Lowden Scholes. The rights of those having vested interests could not be required to await the possible birth of new claimants until the possibility of such birth had become extinct, and any that might be born afterward were represented in the suit and bound by the decree. *Hale* v. *Hale,* 146 Ill. 227; *McCampbell* v. *Mason,* 151 id. 500; *Gavin* v. *Curtin,* 171 id. 640; *Thompson* v. *Adams,* 205 id. 552; *Denegre* v. *Walker,* 214 id. 113; *Hopkins* v. *Patton,* 257 id. 346.

It is also contended that there could be no sale of the life estate of Rebecca Lowden Scholes without her consent, which was not given. Section 32 of the Partition act provides that in case of sale the court may, with the consent, in writing, filed in the court, of the person having such an estate, sell it with the rest. That section evidently applies to a case where one has a life estate in the whole or some definite part of the premises, so that there can be no unity of possession until the death of the life tenant. If otherwise interpreted, the section would enable any party having an undivided interest to prevent a sale by the grant of a life estate and deprive the owner of another undivided in-

terest of all remedy. In this case the children of Henry
B. Lowden had an estate in possession in one-half of the
land and Rebecca Lowden Scholes had an estate in pos-
session for her life with a contingent remainder after her
death. The parties were tenants in common of their estates
in possession, and under the statute the complainants had a
right to partition, and in case the premises could not be
divided without manifest prejudice to the parties in inter-
est, to have the same sold and the proceeds divided. The
life estate of one having an exclusive possession cannot be
sold at a suit of a remainder-man, but to construe section 32
as requiring the consent of one having a life estate in an
undivided part of premises would be to nullify other provi-
sions of the statute. As section 32 does not apply where
the life tenant is a co-tenant with a complainant having a
present vested interest, the written consent of Rebecca Low-
den Scholes was not necessary.

The final decree appointed a trustee to receive, manage
and invest one-half of the funds arising from the sale, and
required him to enter into a bond and to loan the funds
upon first mortgage security upon real estate situated in
Marshall or Woodford county during the lifetime of Re-
becca Lowden Scholes, and annually to file in the office of
the clerk of the court an account and report of his acts as
trustee. It created a trust for the lifetime of Rebecca Low-
den Scholes, and provided that no portion of the principal
of the funds should be used for any purpose; that the trus-
tee should pay to her the net income; that at her death he
should come into court and petition for instructions as to
whom and in what manner the principal should be distrib-
uted, and that the same should be distributed, under the di-
rections of the court, to the persons entitled thereto at that
time. The titles of all the parties having interests being ex-
tinguished by the sale and transfer to the fund, the chan-
cellor took the proper course for preserving the rights of
such parties by creating a trust for the life of Rebecca Low-

den Scholes and retaining jurisdiction of the trustee, and power to determine, at her death, to whom the principal of the fund should go.

The decree, understood as we have stated, is affirmed.

*Decree affirmed.*