(No. 14281.—Decree affirmed.)

JOHN DEAN GILLETT HILL, Appellee, vs. THE SANGAMON
LOAN AND TRUST COMPANY et al. Appellants.

*Opinion filed February 22, 1922.*

1. WILLS—*when a power of appointment is extinguished.* A power of appointment may be extinguished by merger in the fee where the donee of the power subsequently acquires the fee, and in such case the character of the power is changed from a power in gross to a power appurtenant, and if it is a power to appoint by will, its exercise by the donee in devising the estate to which it is appurtenant will extinguish the power.

2. PARTITION—*when land may be partitioned although there is an uncertain reversionary interest.* Where a will, after devising life estates with contingent remainders, gives a reversionary interest to the testator's eight children, and by conveyances the life tenants and all but one of the reversioners effect a merger of their interests and the vesting of the fee, the land may be partitioned if the parties interested in the undestroyed contingent one-eighth reversionary interest are properly represented, and if the land can not be divided the court may decree a sale and appoint a trustee to take charge of the contingent interest in the proceeds pending the happening of the contingency.

APPEAL from the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding.

LELAND P. MILLER, guardian *ad litem*, (JAMES E. MILLER, of counsel,) for appellants.

McCORMICK & MURPHY, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee filed the bill in this case for the partition of certain lands which were a part of the estate left by John D. Gillett. The lands sought to be partitioned were devised by Gillett to his daughters Nina Lemira Gillett and Amarilla Tuttle Gillett for life, each to have an estate for life in the undivided one-half of the premises. At the death of said daughters the land was to go to their children or

3—2—3

descendants of children surviving them, the child or children or descendants of each daughter to take one-half the premises *per stirpes.* The will provided that if the daughters made partition of the land the partition should operate to sever the land, not only as to the life estate of the daughters but for all purposes of the will and the succession under it, and each daughter should thereafter hold her share and estate in severalty, and in disposing of the same under power of appointment in the will should dispose of the one-half set aside to her, and not to an undivided interest in all the lands devised. If either of the daughters died leaving no lineal descendants, power was given to devise the land in which she had a life estate by will to any lineal descendant or descendants of the testator and in such parts or portions as she might prefer. If said daughters, or either of them, died leaving no lineal descendants surviving and without exercising the power of appointment by will, then the lands were to pass under and be controlled by the residuary clause of the will.

The testator, Gillett, left eight children surviving him, and the residuary clause of his will gave all the residue of his estate to the eight children in fee simple. Gillett died in 1888. In 1904 Nina and Amarilla made a voluntary partition of the lands devised them for life, Nina taking what is referred to as the northeast half and Amarilla taking the southwest half. Pending the vesting of the future estates in the lands devised the two daughters for life in the remainder-men, the reversionary interest in the premises passed under the residuary clause of Gillett's will to his eight surviving children, each taking a one-eighth interest. Grace Adeline Littler, a daughter, died in 1891, and by her will her reversionary interest passed to her surviving husband, and by his will it passed to his only son, Stephen, who died leaving a will, by which it passed to the Sangamon Loan and Trust Company, now the First State Trust and Savings Bank. All the remaining owners of any in-

terest in the reversion in fee executed deeds conveying their interests in the reversion, and the two daughters Amarilla and Nina executed deeds conveying their life estates for the purpose of merging the reversion in fee and the life estates and destroying the contingent remainders, by means of which deeds and other conveyances Amarilla became vested with the fee to seven-eighths of the southwest half and Nina to seven-eighths of the northeast half of the premises. In the deeds of the life tenants executed after the contingent remainders were destroyed, conveying the fee to seven-eighths, they covenanted that they would never, at any time or under any circumstances, exercise the power of appointment conferred on them by the will of their father to cut down or detract from the fee conveyed. By *mesne* conveyances appellee became vested with the fee to seven-eighths of the entire premises. Both Nina and Amarilla conveyed their life estates in the undivided one-eighth of the premises to Mary C. Hill, who became the legal owner thereof for the life of the grantors. While this suit was pending Amarilla died, and a supplemental bill was filed alleging her death; that she had never married and left no child; that she left a will, by which she appointed the fee in the southwest half to appellee, a lineal descendant of John D. Gillett, under the power conferred by his will, and the appellants concede appellee became the owner in fee of the whole southwest half. Nina is still living. She is sixty-nine years old and has never been married, so that one-eighth in the reversion in fee in the northeast half of the premises is in the First State Trust and Savings Bank subject to the life estate of Mary C. Hill, subject to be divested by Nina's death leaving lineal descendants, or in the event she leaves none, then to vest in the lineal descendants of Gillett or to such of them as she may appoint by will, and upon the failure to appoint, then to pass under and be controlled by the residuary clause of Gillett's will.

Appellants contend, as it is impossible to determine before the death of Nina where the fee to the one-eighth will vest, partition cannot now be had of the northeast half. Appellants concede that as to the southwest half, (the lands known as Amarilla's share,) if she at the time of her death retained the power of appointment as to the one-eighth interest the entire title is now vested in appellee. The decree so finds. The reason urged by appellants why the decree should be reversed is, that as to one-eighth interest in the northeast half as to which partition was decreed, it cannot now be determined where the absolute fee to that interest will ultimately vest. The bank's title is subject to be divested in the manner before described, but whether it will go to surviving lineal descendants of Nina or under an appointment made by her by will, or whether it will pass under the residuary clause of John D. Gillett's will, can not now be known with certainty. All persons having any interest in the premises as lineal descendants of Gillett or otherwise, and persons in possession, are parties to this suit.

A power of appointment may be extinguished by merger in the fee where the donee of the power subsequently acquires the fee. In such case the character of the power is changed from a power in gross to a power appurtenant, and its exercise may be extinguished by the donee of the power. (*Baker* v. *Wilmert,* 288 Ill. 434.) The power of appointment in Amarilla was extinguished as to the southwest half of the premises except as to the one-eighth, and she exercised the power as to that interest by devising it by her will to appellee, and he then became and is the owner of the absolute fee to the entire southwest half, so that the only question is whether, as the admitted owner of the fee to the undivided seven-eighths of the northeast half, he is entitled to partition. In *Betz* v. *Farling,* 274 Ill. 107, this court said: "Neither the existence of the life estate nor the fact that the fee is determinable on some future event will be an obstacle to a partition on the application

of one in whom a remainder is vested and where the estate is of such a character that the court can determine the extent of the interest. [Citing authorities.] The Partition act contemplates that one having a vested interest may have partition so that his interest may be set off and be available to him, since it provides that every person who upon any contingency may be or become entitled to any beneficiary interest in the premises shall have his interest set forth, and where the share or interest is uncertain or contingent or the ownership or inheritance shall depend upon an executory devise or the remainder shall be contingent, so that the parties cannot be named, the same shall be stated in the bill, and if partition cannot be made without manifest prejudice to the owners, a sale thereof shall be made and the proceeds be divided according to the respective rights of the parties. The children of Henry B. Lowden had an estate in fee simple in the undivided one-half of the land not subject to any contingency and Rebecca Lowden Scholes had a vested estate for her life in the other undivided half, and both were estates in possession. The fact that other children may yet be born to Rebecca Lowden Scholes who will survive her and become entitled to a share of the portion in which she has a life estate did not prevent the setting off of that portion in which such after-born children might acquire an interest. The statute provides that those having uncertain or contingent interests who cannot be named in the bill shall be bound by the decree, and that is in accord with the doctrine of representation where there are parties having identical interests enabled to give effective protection to any who may be afterward born. * * * The rights of those having vested interests could not be required to await the possible birth of new claimants until the possibility of such birth had become extinct, and any that might be born afterward were represented in the suit and bound by the decree." (Citing authorities.)

If the northeast half of the premises is so situated that it can be partitioned no one's interest will be affected injuriously by the partition. If it cannot be partitioned we are unable to see how anyone will be injured by a sale and distribution of the proceeds, for as to said one-eighth interest the proceeds derived from its sale can be placed by the court in the hands of a trustee until the contingency occurs which will vest it in fee absolute. It certainly can not be that the owner of the unconditional fee to seven-eighths of the premises must wait until the death of Nina before he can have his interest set off to him, and this appears to be the view expressed by the court in *Betz* v. *Farling, supra.* We do not think this case analogous to one where a devise is made to a person for life with power in the life tenant to sell the fee.

In our opinion the decree was correct, and it is affirmed.

*Decree affirmed.*