Mary McLaughlin,

*vs.*

Industrial Trust Company, a corporation of the State of Delaware, former trustee of the Estate of Ellen C. Manson, deceased, and Reverend Traverse Eugene Stout, Legatee.

*New Castle, April 3, 1945.*

*Martin G. Hannigan,* for complainant.

*William S. Potter,* of the firm of Southerland, Berl & Potter, for Industrial Trust Co.

Charles F. Richards, of the firm of Richards, Layton & Finger and Alexander Jamison, amici curiae.

HARRINGTON, Chancellor: Ellen C. Manson, late of the city of Wilmington, died September 11, 1933, leaving a last will and testament, which was subsequently proved as such. By that instrument, she gave and devised the residue of her property to the Industrial Trust Company, in trust, for the following purposes:

"The said Trustee shall in its discretion sell my house at No. 706 Vandever Avenue, Wilmington, Delaware, or rent the said house. If and when the said Trustee sells the said house, it shall invest the proceeds of such sale and reinvest the same to the extent that the same may appear to it to be desirable, and shall pay the net income * * * derived from such proceeds during the lifetime of my aforementioned niece, Mary McLaughlin, equally between her, the said Mary McLaughlin, and Reverend Traverse Eugene Stout * * *.

"Upon the death of Mary McLaughlin the said trust shall terminate and the corpus of the said trust shall be paid to Reverend Traverse Eugene Stout for his own personal use and benefit, free and discharged of all trusts or conditions. Should the Reverend Traverse Eugene Stout predecease my niece, Mary McLaughlin, the whole income from the said trust shall thenceforth during her lifetime be paid to my niece, Mary McLaughlin, and upon her death the corpus of the said trust shall be paid to such persons or corporations as the said Reverend Traverse Eugene Stout shall by his last Will and Testament designate as the recipient or recipients thereof. If the Trustee shall in its discretion rent my house at No. 706 Vandever Avenue instead of selling the same, the net income derived from such rent shall be distributed as hereinabove in this paragraph provided equally between my niece, Mary McLaughlin, and Reverend Traverse Eugene Stout, during the joint lives of my said niece and Reverend Traverse Eugene Stout, and upon the death of Reverend Traverse Eugene Stout during my niece's lifetime, the whole net income derived from such rent shall be paid to my said niece, and upon her death the trust shall terminate as hereinabove set forth, and the corpus thereof shall be disposed of as hereinabove in this paragraph set forth."

The will of the deceased therefore provides: (1) that during the lifetime of both Mary McLaughlin and the Reverend Traverse Eugene Stout, the income from the trust property is to be equally divided between them; (2) if Mary

McLaughlin should predecease Father Stout, the trust is to terminate and "the corpus * * * paid to Reverend Traverse Eugene Stout for his own personal use and benefit free and discharged of all trusts or conditions"; (3) if Father Stout should predecease Mary McLaughlin, the trust is to continue during her lifetime and the entire income therefrom is to be paid to her during that period; and (4) at her death the corpus is to "be paid to such persons or corporations as the said Reverend Traverse Eugene Stout shall by his Last Will and Testament designate as the recipient or recipients thereof." There is no disposition of the corpus of the trust at the death of Mary McLaughlin if Father Stout should predecease her but fail to exercise the power given him.

The Industrial Trust Company accepted the trust, and both Mary McLaughlin and the Reverend Traverse Eugene Stout survived the testatrix, and are still living.

The house belonging to Ellen C. Manson has not been sold by the trustee, and Mary McLaughlin seeks a decree for the termination of the trust and a conveyance of the trust property to her in fee, claiming that she has acquired, by transfer, all of the present equitable rights and all possible future legal rights of the Reverend Traverse Eugene Stout in that property, and that the law of merger applies. The complainant claims that Father Stout has not only refused to accept the power given by the will of the deceased to name the ultimate recipients of the trust property, if she (Mary McLaughlin) should survive him, but has also extinguished that power by unequivocal and inconsistent acts.

There is no specific allegation that any property, other than the house of the testatrix, was included in the trust, but it seems to be conceded that there was some personal property.

It appears from the admitted allegations of the bill that on September 19, 1933, the Reverend Traverse Eugene Stout executed an instrument in writing, under seal, duly

witnessed, whereby, after reciting that he was "a legatee and beneficiary named in the will of Ellen C. Manson," deceased, he assigned and transferred "absolutely" to Mary McLaughlin, the complainant, "all property and interest" to which he was or might "be entitled under the said will," and "all claim, interest and right in and to the estate of the said testatrix." In the same instrument, he added: "And I hereby waive and disclaim any right to dispose by my will under the terms of the said will" of the testatrix.

By a later, and more formal, sealed and witnessed agreement with Mary McLaughlin, dated February 17, 1937, the Reverend Traverse Eugene Stout, "for himself, his heirs, executors, administrators and assigns," by substantially the same language, did also assign, transfer and set over absolutely to Mary McLaughlin, her heirs, executors, administrators and assigns, all of the "right, title, property and interest of whatever nature," to which he was or might become entitled under the will of Ellen C. Manson, deceased.

The bill, after referring to that part of the contract of 1937, alleges that the Reverend Traverse Eugene Stout "did further agree by the said written contract that he would designate in his last Will and Testament at the request of the said Mary McLaughlin, the beneficiary of the corpus of the estate of Ellen C. Manson, with the further right in the said Mary McLaughlin to change the beneficiary or beneficiaries from time to time as she saw fit; * * *."

Copies of these instruments are attached to the bill.

Moreover, it appears from the 1937 agreement that Father Stout covenanted and agreed to make a last will and testament, and to provide therein that "the corpus of the trust estate created by the last Will and Testament of Ellen C. Manson" should be transferred to certain named persons; and that this provision should be "irrevocable (except with the consent in writing of * * * Mary McLaughlin) * * *." The same contract contained a proviso that Mary

McLaughlin reserved "the right to change, from time to time, the beneficiaries of the corpus of the said trust estate"; and, upon receiving written notice to that effect, Father Stout covenanted and agreed to "amend his last Will and Testament accordingly." It does not appear that any such notice was ever given by the complainant.

The supplemental bill filed also alleges that on April 14, 1944, Mary McLaughlin executed a deed granting to the Reverend Traverse Eugene Stout, all her right, title and interest in the trust property under the last will and testament of Ellen C. Manson, deceased; that on April 19, 1944, Father Stout executed a deed granting and conveying to Catherine C. Fitzpatrick all of his right title and interest in the same property, and on April 20, 1944, Catherine C. Fitzpatrick granted and conveyed unto Mary McLaughlin all of her right, title and interest in that property.

The deed of Father Stout attached to the bill as an exhibit recites that Mary McLaughlin had conveyed all of her right, title and interest in the trust property to him, and that he was therefore the "sole beneficial owner"; the deed then purported to convey the property to Catherine C. Fitzpatrick, her heirs and assigns. It contained the usual habendum clause but no general warranty.

By the assignment of September 19, 1933, Father Stout therefore sought to accomplish two purposes, (1) to assign and transfer to Mary McLaughlin all of his present or possible future interests in the trust property and (2) to waive and surrender any right to exercise the power given him by the will of Ellen C. Manson, deceased, if Mary McLaughlin should survive him. By the instrument executed February 17, 1937, he not only assigned all of his right, title and interest in the trust property to Mary McLaughlin, but also covenanted to dispose of the property by will in a certain manner.

All parties concede that the power given by the testatrix

was a conditional power *in gross;* it was to take effect, if at all, at the termination of Father Stout's life estate if he should die during the lifetime of Mary McLaughlin and its exercise could not affect that interest or cut it short. *West v. Berney,* 1 *Russ. and My.* 431, 39 *Eng. Repr.* 167; *Columbia Trust Co. v. Christopher,* 133 *Ky.* 335, 117 *S.W.* 943; 49 *C.J.* 1251. Nor is the donee bound to exercise the power given; it "is neither a trust nor an obligation in the nature of a trust." *Equitable Trust Co. v. Union Nat. Bank,* 25 *Del. Ch.* 287, 18 *A.* 2d 228; *Simes Fut. Interests, Sec.* 280; *Perry on Trusts, Sec.* 248. Sir John Leach pointed out in his well known dictum in *West v. Berney, supra,* that:

"* * *, every power reserved to a grantee for life though not appendant to his own estate, as a leasing power, but to take effect after the termination of his own estate, and therefore in gross, may be extinguished."

See also 76 *A. L. R.* 1430, 1431-1434; *In re D'Angibau,* 1880, 15 *Ch. Div.* 228. Indeed, in England, prior to the act of 1881, all powers other than powers merely collateral and powers coupled with a trust could be suspended or destroyed by the donees thereof. *Farwell on Powers,* (3d *Ed.*) 16; *Simes Fut. Interests, Sec.* 279; 25 *Hals. Laws of England,* (2d *Ed.*) 588. That was true though the right to exercise the power depended on the happening of some future event and was therefore conditional. *Johnson v. Harris, et al.,* 202 *Ky.* 193, 259 *S.W.* 35; *Farwell on Powers, supra,* 17, 19; *Sugden on Powers,* 149. It is not seriously denied that the American cases seem to justify the application of the same broad rule to all powers in gross not in trust though they are to be exercised by will. *Simes Future Interests, Secs.* 279-281, 283.

At any rate cases relating to the attempted premature exercise of powers of sale given on the happening of certain events, (*Raper v. Sanders,* 21 *Grat.* [62 *Va.*] 60; *McClintock v. Cowen,* 49 *Pa.* 256; 49 *C.J.* 1256) involve different principles and are not inconsistent with the conclusion that

a general power *in gross* exercisable by will can be extinguished in the donee's lifetime. See *Grosvenor v. Bowen,* 15 *R. I.* 549, 10 *A.* 589; *Johnson v. Harris,* 202 *Ky.* 193, 259 *S. W.* 35; *Columbia Trust Co. v. Christopher, supra.* In principle that rule has been criticized in England and by the Restatement of the Law on the ground that it defeats the intent of the testatrix (76 *A. L. R.* 1430, 1431; *Restat. Law of Prop. Fut. Ints., pages* 1883, 1884, 1886); but the Restatement seems to concede that "all general powers of appointment can be released by the donees." *Restat. Prop. Fut. Ints.,* 1886, *Sec.* 334.

In any event, this case comes within that limited rule. *Simes Fut. Ints., Sec.* 246. Under the power given, the appointment could be made in favor of such persons or corporations as the donee should designate. This might include his personal representatives or even creditors; and ordinarily the restrictions that make a power special merely relate to the persons who may take under it. See *Lyon v. Alexander,* 304 *Pa.* 288, 156 *A.* 84, 76 *A. L. R.* 1427. Moreover, it seems that all powers which the donee may exercise for his own benefit may be extinguished. *Simes Fut. Ints., Sec.* 282; 76 *A. L. R.* 1431, 1433; *Lyon v. Alexander, supra.*

In order to extinguish a power there must be an express or implied release to the persons whose interest in the property would be affected by an appointment, or some other acts wholly inconsistent with its subsequent exercise. *Farwell on Powers, supra,* 19; *Simes Fut. Ints.,* § 285; *Columbia Trust Co. v. Christopher,* 133 *Ky.* 335, 117 *S. W.* 943; *Lyon v. Alexander, supra; Heid v. Fortunato,* 15 *Del. Ch.* 367, 138 *A.* 606; 76 *A. L. R.* 1430, 1434.

"A covenant or agreement not to execute a power operates, in equity, either entirely or *pro tanto,* as the case may be, as a release of the power. And a covenant could have this effect although it is merely voluntary." *Farwell on Powers, supra,* 19.

But the trust cannot be terminated on the ground that there has been a merger of all legal and equitable rights. No one claims that Father Stout's covenant, in 1937, to make a will extinguished the power. See *Vinton v. Pratt,* 228 *Mass.* 468, 117 *N.E.* 919, *L. R. A.* 1918*A*, 1157; 56 *Harv. Law Rev.* 768; *Restat. Property Fut. Interests, Sec.* 340; but see 76 *A. L. R.* 1435. If a devisee acts promptly he can refuse to accept the gift. *Dare v. New Brunswick Trust Co.,* 122 *N. J. Eq.* 349, 194 *A.* 61. Applying the same principle, it is claimed that the power was extinguished by Father Stout by the repudiation and waiver of that right in the instrument executed by him in 1933. See *Merrill v. Lynch,* 173 *Misc.* 39, 13 *N. Y. S.* 2d 514; *Simes Fut. Interests, Sec.* 277. But it is unnecessary to determine that question. Nor is it necessary to determine whether the deed of Mary McLaughlin to Father Stout followed by his deed to Catherine C. Fitzpatrick purporting to convey an absolute fee simple title extinguished the power to the same extent as though it were a power appendant and entitles the complainant, a subsequent grantee, to the relief sought. See 1 *Simes Fut. Interests, Sec.* 285; 3 *Tiffany on Real Property,* (3*d Ed.*) *Sec.* 84; *Mountjoy v. Kasselman,* 225 *Ky.* 55, 7 *S.W.* 2d 512; *Hill v. Sangamon Loan & Trust Co.,* 302 *Ill.* 33, 134 *N.E.* 112. In any event, if the power has been extinguished, Father Stout cannot exercise it; and if he should predecease Mary McLaughlin, the heirs at law of the testatrix would ultimately take the property. The same would also be true if the power was not extinguished and Father Stout should fail to exercise it. Nor does it appear that Mary McLaughlin is the sole heir of the testatrix; the bill merely alleges that she is a niece.

The bill must therefore be dismissed and a decree will be entered accordingly.