CASE 2—EQUITY—FEBRUARY 27, 1880.

# Davidson's ex'rs v. Kemper, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The devise of the estate by the testator is to his executors, to make profit, increase, and income for the benefit thereof.

2. Neither the whole nor any specific portion of the income is to be appropriated by the executors for the benefit of Charles Davidson, but only such sums, not exceeding the income of one fourth thereof, as they may deem most expedient.

3. It is manifest that the testator did not intend to give to his son Charles any estate independent of the will of the executors; but it was given to the executors, who, in the exercise of their discretion, were to apply not exceeding the income thereof to Charles Davidson's support.

4. Inasmuch as the trust is not enforceable by the beneficiary, the estate cannot be subjected by his creditors.

JAMES SPEED AND THOS. SPEED FOR APPELLANTS.

1. It is clear that Charles Davidson has no interest in the estate that he could demand of the executors, or that can be subjected to the payment of debts that he may contract. The executors alone have discretionary power to say how much he is to receive.

2. We maintain that, according to the authorities, sec. 21, chap. 63, Gen. Stat., has no application to this case. (1 Otto, 726; 2 Rawle, 33; 7 Wills, 547; 47 Penn. St., 113; 21 Conn., 1; 10 Gratt., 336; 35 N. Y., 361; Eastland v. Jordan, 3 Bibb, 186; Cosby v. Ferguson, 3 J. J. Mar., 264; Pope v. Elliott, 8 B. Mon., 56; Samuel v. Johnson, 12 B. Mon., 479; Samuel v. Salter, 3 Met., 259; White v. Thomas, 8 Bush, 661.)

HARLAN & WILSON FOR APPELLEES.

1. Under the testator's will, Charles Davidson is entitled to the income of one fourth of the estate devised, and under sec. 21, art. 1, chap. 63, Gen. Stat., the income is subject to the debts of the *cestui que trust*.

2. He had a right to demand of the executors that they pay him not exceeding the value of one fourth of his share, if he was diligent and safe, and inclined to business, or that it would induce him to attend to business. The statute cannot be repealed by any at-

tempt of the testator to keep the creditors of his son from subjecting his estate to the payment of his debts. (Pope v. Elliott, 8 B. Mon., 56; Eastland v. Jordan, 3 Bibb, 186; Jones v. Langhorn, 3. *Ib.*, 455; Crosier v. Young, 3 Mon., 159; Cosby v. Ferguson, 3 J. J. Mar., 264; Flournoy v. Johnson, 7 B. Mon., 693; Samuel v. Salter,, 3 Met., 259; White v. Thomas, 8 Bush, 661; Anderson v. Briscoe,. 12 Bush, 344.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

The question is, whether the interest of Charles Davidson,, under the will of his father, William H. Davidson, can be subjected to the payment of the debts of Charles Davidson..

The pertinent clauses of the will are as follows:

"I appoint Joshua F. Speed and James W. Hinning . . executors of this my will, and direct that no security be required of them or either of them in qualifying or acting as such; and I do hereby devise to my said executors all my estate, both real and personal, whether in possession, remainder, or reversion, and wherever situated, for the uses and purposes hereinafter directed and provided."

The fourth clause is as follows: "The entire residue of my estate, real and personal, shall be held, used, and controlled by my said executors for the equal use and benefit of my said wife, Letitia, and my three children, Henry G. Davidson, Alice B. Davidson, and *Charles Davidson*, share and share alike, and my executors are empowered and requested to manage the estate in such way as may seem to them most to redound to the increase thereof, and to the best interest of my said wife and children, and full power is hereby given and devised to my said executors, in their discretion, to sell and convey any and all of my real estate, . . . . it being my intention to clothe my said executors with, and I do hereby grant to them, ample and full discretionary powers to control and dispose of my

estate, and *to make profit, increase, and income for the benefit thereof* in the same way and as fully as I could lawfully do if living, subject only to the express provisions of this will; and my said executors are not to be responsible for any loss on account of accident or error in judgment in any such sales, purchase, investment, or re-investments as herein provided for."

The seventh clause reads:

'  "My said executors shall pay to each of my said three children, or *for their use and benefit*, quarterly, half-yearly, or annually, as they may deem most expedient, *a sum or sums suitable and proper for the support of each, not exceeding* to either the income or profits of his or her share of my estate under the control of my executors (*i. e.*), the share of each during the life of my wife, being one equal fourth part, and if she dies without a will, then the share of each being one equal third part of my estate; or if she disposes by will, as above provided, then the share of each of my children under this will will be an equal third part of that remaining in the hands of my executors; and my executors, to do equal justice to each devisee under this will, may keep the funds in common during the life of my wife." . . . "Neither of my two sons, nor my daughter, . . . shall have any power or right to sell or encumber any part of my said estate in the hands of my said executors, or *the profits or income thereof, or to anticipate the receipts thereon*, nor shall my said estate or any part thereof be *in any way liable for the debts, engagements, or contracts of either of them*, and my estate and every part thereof, which shall be held by my executors in trust for my said children and their issue, shall remain in trust as to the share of each, *and the disabilities of alienation or encumbrance by them and their issue continue for the period of the life of each of my said children*," &c.

"All discretionary powers herein delegated to my said executors are personal trusts to them."

It is further provided, that if the executors should fail to act, the Louisville Chancery Court should have power to appoint, but that such appointees "shall execute only the positive duties under this will, according to law, paying over the income to the parties entitled, holding the principal undisturbed, and shall not exercise any discretionary powers herein given to my executors as to buying and selling and trading on my estate."

From these provisions of the will it is clear that the testator designed that the children should not, under any circumstances, receive more than the proceeds of a certain portion of the estate, which was to be expended, as the judgment of the executors might approve, in their support. It is equally clear that the trust in the executors was a personal trust, and that the testator attempted, so far as it was possible to do, to dedicate such portion of the proceeds as the executors might deem proper, to the support of the children, and that it should not be liable, under any circumstances, for the debts of the children.

Will the statute permit that intention to be carried into effect?

Section 21, article 1, chapter 63, of the General Statutes, reads:

"Estates of every kind, held or possessed in trust, shall be subject to the debts and charges of the persons to whose use, or for whose benefit they shall be respectively held or possessed, as they would be if those persons owned the like interest in the property held or possessed as they own or shall own in the use or trust thereof."

This statute has, in substance, been the law of this State since January, 1796 (Morehead and Brown's Statutes, page 443), and has been frequently construed by this court.

In Eastland v. Jordan, 3 Bibb, 186 (1813), a negro was transferred by deed in trust, "that the proceeds of his hire should be applied to the maintenance of Goodrich Light-foot during his life." It was held that the *cestui que trust* had a life estate in the negro that could be subjected to the satisfaction of his debts.

In Cosby v. Ferguson, 3 J. J. M., 264 (1830), a deed of trust by Cosby, transferring $30,000 in trust for the benefit of himself and family, the interest to be appropriated to the maintenance and use of his family and himself during their lives—Held that the interest of Cosby could be subjected to the payment of his debts.

In Pope's ex'r v. Elliott, 8 B. M., 56 (1847), the testator directed his executors to appropriate twenty-five dollars per month to the support of his son Robert during his life. Robert becoming indebted, a suit was brought by a creditor to subject a certain sum in the hands of the executors, which had accumulated by reason of the monthly allowance not having been paid out, and also to subject the monthly allowance of twenty-five dollars, as it might accrue.

Chief Justice Marshall, delivering the opinion of the court, said: "If the executors were or are indebted to Robert Pope to the extent that the $25 a month, directed to be appropriated to his support, may have at any time accumulated in their hands, we are of the opinion that, prospectively, they are not and cannot be said to be indebted to him in any sum of money; that they are under no obligations to pay him $25 a month in future, but only to appropriate that sum to his support; and if they are under any obligation to

pay him any portion of that sum, it is only so much of it as may not be required for his support, and to which he may become entitled only on that ground, or because, having provided otherwise for his own support, he should be compensated therefor out of the fund appropriated for that. purpose to the extent of $25 a month. . . . . . We are of the opinion that the decree has gone too far in appropriating to the complainant's demand any part of the allowance of $25 per month, beyond the accumulations in the hands. of the executors at the date of the decree. . . . The attachment operated only upon the accumulations in the executor's hands at the filing of the bill."

In Samuel & Johnson v. Ellis, 12 B. M., 480 (1851), the will, after directing a sale of the real estate, and an equal division among the children, continues: "except my son Ottoway's and my daughter Nancy's part, their portion shall remain in the hands of my executors, to be disposed. of as they may think best for them and their heirs." It was held that the interest of Ottoway was subject to his debts.

In Samuel v. Salter, 3 Met., 260 (1860), the will directed the trustee to "furnish to my son, from time to time, as he may need the same, such sums as may be sufficient for the reasonable and comfortable support of said son during his. life." The will further provides, that in furnishing maintenance to the son, the trustee shall not be restricted to the profits of the estate, but may consume the estate itself if necessary for the comfortable maintenance of the son. It was held that the interest of the son extended to the whole estate, and that it could be subjected to the payment of his. debts.

In White v. Thomas, 8 Bush, 662, there was a devise of the use, during life, of certain real and personal property, and a provision that any attempt on the part of the *cestui que trust* to alienate it, or on the part of any creditor to subject it to the payment of the debts of the *cestui que trust*, should terminate the right to use and enjoy the property. It was held that the interest could not be subjected.

It will be observed that where, in the cases cited, the interest of the beneficiary has been subjected, there was an absolute appropriation of a certain sum for the benefit of the *cestui que trust*, to be applied in some instances under the direction of the trustee, but in no case, as here, has it been left discretionary with the trustee as to whether the *cestui que trust* should have the use or benefit of any of the property held in trust. In view of the language of the will in this case, it is unnecessary to consider whether, under the authorities cited, an absolute appropriation of the proceeds of one third of the estate to the maintenance of Charles Davidson would have authorized the court to subject it to the payment of his debts. The devise of the estate is to the executors " to make profit, increase, and income for the benefit *thereof*." Neither the whole nor any specific portion of the income is to be appropriated for the benefit of Charles Davidson, but only such sums, not exceeding the income, as the executors " may deem most expedient." That the will makes the trust in the executors a personal trust renders it manifest that it was not the intention of the testator to give to Charles Davidson any estate or interest which was to be independent of the wishes of the executors. It was not intended to give him any enforceable claim against the executors, but the estate was given to the executors to be managed and increased for the benefit of those who were to

come after, with a naked permission to use, not exceeding the income of a certain part of the estate, for the support and maintenance of Charles Davidson. The designation of the parts of the estate was intended only to indicate the portion from which the income to be appropriated within the discretion of the executors should spring. There is no debt due from the executors to Charles Davidson, and no duty on their part to him which is enforceable at law or in equity; and, consequently, there are no rights to which creditors can be substituted. The executors hold no "estate in trust" for Charles Davidson, either within the letter or spirit of section 21, article 1, chapter 63, of General Statutes.

In Perry on Trusts, section 508, it is said: "Discretionary powers of trustees are usually divided into four principal classes, as follows: 1. When it is left to the discretion of the trustees to make or withhold a gift or appointment of the trust property to a specified donee, or *cestui que trust*, or class of donees. In this class, if it is a condition precedent to the gift, legacy, or other interest, that the trustees shall exercise their power in favor of the donee, whether of appointment or assent, no interest will vest in the donee until the power is exercised; and if the trustees refuse to exercise it, the gift cannot be enforced. The court cannot decide upon the propriety or impropriety of the refusal of the trustees to give their assent, unless it proceed from selfish, corrupt, or improper motives; and the burden is upon the donee to prove such motives, and not upon the trustees to show good reasons for their action."

The trust in this case clearly comes under the head of this general classification of discretionary powers, and as it is not enforceable by the beneficiary, it cannot be reached by his creditors.

Judgment reversed so far as it subjects any property in the hands of the executors, and cause remanded for further proceedings.