## Suggett's Trustees v. Pirtle, et al.

(Decided June 12, 1923.)

## Appeal from Henderson Circuit Court.

1. Wills—Gifts in Trust Held for Two Successive Lives Subject to Charge for Education of Minor.—A will giving the residue to trustees for the use of a minor son of two individuals, with provision that the parents of the son had a privilege of a home on the land, but that one-quarter of the proceeds should be appropriated to the education of the minor son with a view to his entering the ministry, and that all the crops raised on the farm except that one-fourth would be used by his parents for the benefit of themselves and family, gave a life estate to the parents, subject to the charge on the one-fourth interest of the proceeds, and after the expiration of that life estate a life estate to the named minor, with remainder in fee to his children.

2. Wills—Trust Held Operative Only on Interest Charged on Life Estate for Education of Minor.—Where a will gave the residue to trustees for the benefit of two individuals for their lives, and then for their minor son for his life, with remainder to his children, but provided that one-fourth of the proceeds of the crops raised on the property should be devoted to the education of the minor son, the operation of the trust was restricted to the control of the proceeds set apart for the education of the son, and, though they had nominal legal title to the land and might have exercised nominal control, they had no right to use or control any of the income except that portion.

3. Evidence—Court will Assume Man 48 Years Old has no Longer Need of Fund for Education.—The court can assume that a man who was then 48 years of age has no further need of a sum given to trustees by a will to provide for his education for the ministry.

4. Trusts—Trust Terminates on Accomplishment of Purpose.—When a trust is created for a particular purpose, or a special reason, the

trust terminates when the purpose has been accomplished or the reason no longer exists.

5. Trusts—Appointment of Trustees After Termination of Trust Held Ineffectual.—Where a will gave property to trustees for the benefit of a husband and wife for their lives and then for their son for his life, with remainder to his children, but set aside one-fourth of the income for the education of the son for the ministry, and no trustees had ever qualified under the will until the son reached the age of 48 years, so it could be assumed he did not need the fund for education, the appointment of trustees at that time, after the death of the first life tenants and the transfer of all the son's interest to others, was ineffectual for any purpose and the trustees are not entitled to recover the property from the transferees.

W. A. WELLS and ODIE DUNCAN for appellants.

YEAMAN & YEAMAN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

On the 23rd of April, 1877, Almyra E. Suggett executed her will. After making certain specific bequests, not here involved, the residuary clause provides:

"I give all the balance of my estate real and personal to James White and Henry H. Farmer and their legal successors of the aforenamed county and state in trust for the use and benefit of James Duane Brown Robards, son of B. F. and Lucy J. Robards, the land never to be divided but to descend to the children that may be born in lawful marriage to said J. D. B. Robards. But the property is given with restrictions to be mentioned below. B. F. and Lucy J. Robards have the privilege of a home on my land for themselves and any children they now have or she may have during minority or as long as any girl child of hers is unmarried, but one-fourth of the proceeds of the crop raised is to be appropriated by trustees to the education of said J. D. B. Robards with a view to his entering the Christian ministry as a Baptist or Presbyterian. The farm and land and proceeds are to be controlled by said trustee and nothing raised on the farm is to be subject to any one's debts except as to my own as before mentioned and all raised on the farm except the fourth appropriated as before mentioned is to be used by Lucy J. Robards for the benefit of herself and family and B. F. Robards, should he be left a widower so long as he may continue unmarried but no children except Lucy J. Robards, shall be raised

on the place out of its proceeds, should J. D. B. Robards die without children then the land shall belong to the children of Lucy J. Robards who shall have the use of it during her lifetime as directed in this will.''

The testatrix died between that time and June, 1877, and during that month her will was duly probated.

At the date of the will and the death of the testatrix J. D. B. Robards, referred to therein, was an infant only four or five years of age. The trustees named therein never qualified, nor did any successors of such trustees ever qualify or attempt to qualify until November, 1920, at which time appellants Wells and Duncan were by an order of the Henderson county court appointed such trustees.

In 1894 J. D. B. Robards married his wife, Myrtle, and they, together with Lucy J. Robards and her husband, thereafter lived upon the land. B. F. Robards, the husband of Lucy J. Robards, having died, Lucy married A. A. Brown. In 1899 Myrtle Robards instituted a suit against her husband for divorce and alimony, and shortly thereafter J. W. Porter also instituted suit against J. D. B. Robards seeking the enforcement of certain mortgages executed by Robards to him to secure indebtedness; the two suits were consolidated, and the court in its judgment allotted to Myrtle Robards as and for a homestead one hundred acres out of a tract of two hundred and twenty acres for and during her natural life, and directed a sale of the life estate of J. B. D. Robards in the remaining 120 acres to satisfy the debts of Porter.

Thereafter Lucy J. Brown (formerly Robards) brought an action against Myrtle Robards and J. W. Porter for the possession of this 220 acres of land and the rents thereon, she claiming to have a life estate therein under the will of Almyra E. Suggett. From a judgment entered in that action an appeal was prosecuted, and this court in construing the will of Almyra E. Suggett said:

''We are of the opinion that B. F. and Lucy J. Robards took a life estate in the tract of 220 acres of land under the will of Mrs. Suggett, subjected to a charge of one-fourth of the proceeds of the crop raised thereon for the education of their son, J. D. B. Robards. It appears from the testimony that appellee, Mrs. Lucy J. Robards, has no minor children, and her son, J. D. B. Robards, has finished his education and has now no valid claim to

one-fourth the proceeds of the farm. It, therefore, follows that appellee is entitled to the use and occupancy of the farm during her life. At her death J. D. B. Robards has a life estate therein, and, at his death, it descends to his children born in lawful wedlock. As appellee was not a party to the proceedings in which the appellant, Myrtle Webster, was adjudged 100 acres of the land as alimony, and J. W. Porter a lien upon the residue to secure the payment of his debt, her interest is not in anywise affected by this judgment, nor is there any proof in the record to support the plea of estoppel.'' Webster v. Brown, 24 R. 1987.

At the sale of the life estate Porter became the purchaser. Thereafter Porter died and in the settlement of his estate his said interest was sold under order of court, and the appellees Latta and Yeaman became the purchasers. The purchasers thereafter became the owners by conveyance of whatever homestead right Myrtle Robards had in the one hundred acres so adjudged to her for life. It appears that J. D. B. Robards and Myrtle, his wife, had two children as a result of their marriage, and Latta and Yeaman thereafter bought from them and received from each of them and their husbands a conveyance of their remainder interest in the two hundred and twenty acres of land subject to the life estate of J. D. B. Robards.

Lucy J. Brown, formerly Robards, having died, in March, 1920, Latta and Yeaman instituted an action against J. D. B. Robards for the possession of the two hundred and twenty acres of land and were in that action adjudged such possession, subject to the right of possession of Myrtle Robards to the one hundred acres theretofore adjudged her; and they allege in this action, as heretofore stated, that in October, 1920, they became the owners by purchase and conveyance of whatever interest Myrtle had in the one hundred acres.

In March, 1921, the two trustees so appointed in November, 1920, instituted this action against Latta and Yeaman and their lessees, Pirtle and Jewell, asserting the right to possession as such trustees of the two hundred and twenty acres of land and asking judgment for possession of the land and the rents thereof.

The answer set out at length and in detail the several actions, orders and judgments in the suits referred to and relied upon them and the sales had therein as di-

vesting J. D. B. Robards of any title whatsoever in the two hundred and twenty acres of land, and asserting title in themselves thereto. An agreed statement of facts was filed and the cause submitted in the trial court upon the pleadings and such agreed statement, and the chancellor dismissed the petition of the plaintiffs, and from that judgment this appeal is prosecuted.

It seems perfectly clear that the testatrix first devised a life estate in the two hundred and twenty acres to B. F. and Lucy J. Robards, except that one-fourth of the proceeds of the crops thereon were to be appropriated by the trustees to the education of J. D. B. Robards with a view to his entry into the Christian ministry; then after the expiration of the life estate of B. F. and Lucy J. Robards, J. D. B. Robards was given a life estate with remainder in fee to his children, and this was what was held in the case of Webster v. Brown, 24 R. 1987.

The only right to the possession of this tract of land asserted by the trustees grows out of the creation of the trust referred to in the will of Almyra E. Suggett.

The naked title to the trust property is devised to two named trustees and their successors for the use and benefit of J. D. B. Robards for and during his lifetime, but the operation of the trust is restricted by the further provision that everything produced on the land, except the one-fourth appropriated therein for the education of J. D. B. Robards, "is to be used by Lucy J. Robards for the benefit of herself and family."

Even if the named trustees had immediately qualified, while they would have had nominal control of the farm, during the life of Lucy J. Robards the trust could have had no operation whatsoever upon anything except the one-fourth of the proceeds specifically set apart for the education of J. D. B. Robards. In other words, the only trust property under the terms of the instrument specifically placed in the hands of the trustees was one-fourth of the proceeds thereof to be used for a specified purpose.

While the nominal legal title to the land might have passed to the designated trustees if they had qualified, and they might have exercised nominal control over the farm, the subsequent provision giving to Lucy J. Robards a life estate in the land and providing that everything produced thereon, except the one-fourth set apart for the education of J. D. B. Robards, was to be used by

Lucy J. Robards for her benefit and that of her family, effectually restricted the rights of the trustees to any but nominal control over the farm or the right to the use or control of any of the income therefrom, except the one-fourth set apart for the specific purpose named.

It is alleged in the petition that J. D. B. Robards was then forty-eight years of age (March, 1921); there is no allegation that any part of the proceeds from this farm is necessary for his education, and we will assume that the period is long since past when he is in need of any educational fund, and, as recited in the case of Webster v. Brown referred to, he "has finished his education and has now no valid claim to one-fourth the proceeds of the farm."

So the question then presented is after the purpose for which a trust is created shall have been accomplished as contemplated by the creator thereof, and at a time when it is no longer feasible or practicable to further pursue the purposes for which the trust is created, will not a chancellor in the exercise of a sound discretion say not only that the trust is terminated, but under the facts of this case is he not required to say that there is nothing left upon which the trust may operate?

Not only has his education been completed and the primary purpose of the trust been accomplished, but even if the trust had embraced the land as a part of the corpus of the trust estate, we find from this record that all interest of J. D. B. Robards in the trust property has passed from him, and therefore there is nothing upon which the trust could operate.

When these trustees were appointed in November, 1920, this situation existed, and thereafter their appointment was wholly insufficient to give life to a trust that had already terminated, or to revest in the beneficiary the title which had already passed from him.

When a trust is created for a particular purpose or a special reason, when that purpose has been accomplished or that reason no longer exists, then the trust is at an end. As said by this court in the case of Weakley, Trustee v. Buckner, 91 Ky. 457:

"Where a trust is created for a special purpose, it ceases with the termination of the cause which called it into existence; reason dictates that the maker must have so intended."

Construing altogether the provisions of this will it appears to have been the single purpose of the trust created to provide for the education in a proper way of J. D. B. Robards, and that purpose having been accomplished, or at least the time having passed in which it could be reasonably expected that it might be accomplished, the trust itself is at an end, and the appointment by the county court in November, 1920, of trustees was ineffectual for any purpose whatever. Weakley, Trustee v. Buckner, 91 Ky. 457; Cyc., vol. 39, pp. 99, 278-9; Cyc. vol. 40, p. 1807; note to Eakle v. Ingram, 100 Am. St. Rep. 99.

The judgment of the chancellor is in accord with these views, and is affirmed.