## Sandford's Administrator v. Sandford et al.

## Smith et al. v. Sandford's Administrator.

(Decided June 7, 1929.)

430

CARROLL & CARROLL for plaintiff.

ALLEN PREWITT, guardian ad litem, for infant defendants.

WRIGHT & WRIGHT for adult defendants.

JAMES P. HANRAHAN, warning order attorney.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

Charles H. Sandford died testate and a resident of Shelby county. Before his death he executed his holographic will, and later he executed in the same way a codicil thereto. This equity action was brought by his administrator with the will annexed, and also as trustee under his will, against his devisees and heirs to obtain a judicial construction of the will and codicil and directions as to how plaintiff should proceed in the administration of the estate. The involved documents are much confused in their language and, at least in part, somewhat indefinite and obscure and present questions for solution of more or less difficulty. The learned trial judge concluded that, for the reasons stated, all of the devises and bequests contained in both papers were void for uncertainty, except the devise of a one-half interest in a tract of land in Shelby county to R. H. Sandford, the owner of the other half interest, for and during the life of the devisee; but the judgment confined that clause to only a portion of the entire jointly owned farm, which portion is known and was referred to in the will as "Caudill Bros." farm. From that judgment these appeals are prosecuted.

For a proper understanding of the questions presented it will be necessary at the expense of some space to insert in full both the will and the codicil, the first of which says:

"I Charles H. Sandford now of Shelby Co. Ky. make this my last will and testament hereby revoking all other wills made by me heretofore. I direct that the Peoples Bank & Trust Co. of Shelbyville, Ky., be appointed Trustee under this will of all my property real, personal & mixed; the said Trustee to hold my estate as follows: except the farm which R. Hunter Sanford & I own jointly in Shelby Co. the farm being the land bot from Caudill Bros. & on which Hunter and I now reside, the said Trustee will pay to Mrs. Katherine Pendleton, my aunt now of Walnut Hills, Cincinnati, Ohio such sum as may be necessary to keep her in comfort as long as she lives, will pay to my uncles Hunte & Ballard Smith now of Jefferson Co. Ky. such sums as may be necessary to keep them in comfort during their lives; and will assist the two sons of Ballard—A. O. and Halla—in

any legitimate business which may be necessary for their support. I have planned to see that L. M. Sanford 3rd the son of my deceased brother L. M. Sanford is educated & graduated at the Boston School of Technology and have him & his mother consent to use any and all of the Texas property of which he owns an undivided 1/9 interest, to this end; if this property be not sufficient for the purpose the Trustee is authorized to use such a part of my estate as may be necessary for him to finish this school, provided however, that if the said L. M. S. 111 3rd shows no disposition to keep up with his studies then my said Trustee is authorized to stop him from school & let him engage in some work or business, I shall direct that my Trustee advise with Judge Charles G. Marshall on the subject before taking any final action. My trustee is authorized and directed to use enough of my estate to assist any of my nephews & nieces to secure a collegiate education if the parents of either are unable to give them a college education.

"My Trustee is authorized and directed to assist any of my brothers and sisters & any of my nephews and nieces should any of them need financial assistance by reason of ill health, financial troubles or for any cause whatever they are in need of assistance.

"As to my undivided ½ interest in the farm hereinbefore mentioned on which Hunter Sanford & I live I will & devise my whole interest in said farm to Hunter Sanford for & during his life & at his death to pass to my said Trustee the Peoples Bank & Trust Co. of Shelbyville and upon the terms herein stated, that is the said Trustee is to take charge & control of it as the rest of my estate is directed and controlled by the said Trustee.

"After the death of Hunter Sanford the said Trustee may sell my interest in said farm and reinvest the proceeds in other good real estate or other property which may be approved by the Judge of the Shelby Circuit Court. It is the intention of this will for my Trustee & its successors to hold my estate in trust for the benefit of my brothers & sisters my nephews & nieces & their heirs so long as any of them are in existence & in the event the family as stated should become extinct then my estate is to be held in trust for the benefit & education of as many

orphans of the State of Ky. as the income thereof will support & educate."

The codicil is in these words:

"I, Chas. H. Sanford now of Shelby Co. Ky. having written a will recently in which I directed a number of other provisions regarding the disposition of my property, that my brother R. H. Sanford take and hold the farm in Shelby County which we own jointly for and during his life, now hereby desire it to be understood as my intention and will that if this former will of mine heretofore referred to should by any chance be held to be unenforceable or be set aside by order of court, my brother R. H. Sanford is hereby given and bequeathed for and during his life my entire undivided interest in said farm & that a sufficient amount of my estate be used to pay one half of the entire indebtedness on said farm at the time of my death. This Nov. 8th, 1922."

We will first dispose of the question as to the particular land that the testator intended to be covered by the devise to his brother, R. H. (Hunter) Sanford. As stated, the trial court held that it extended only to that portion of the farm known as the "Caudill Bros." tract, containing about 320 acres of the entire farm, consisting of something like 375 acres. The residence theretofore occupied by testator and his brother was located upon the Caudill Bros. tract, but the various parcels composing the entire farm were contiguous and had theretofore been operated by the owners as one entire farm. In the original will creating the trusts, to be hereinafter discussed, in an exception therefrom for the life of R. H. Sanford, the testator said: "Except the farm which R. Hunter Sanford & I own jointly in Shelby Co. the farm being the land bought from Caudill Bros. & on which Hunter and I now reside." Further along in his will, and when disposing of his half interest in the farm, he refers to it as "my undivided half interest in the farm hereinbefore mentioned," which he devised to his brother for his natural life, and after which it was to become a part of the trust estate.

The rule is universal that in the interpretation of wills the intention of the testator is the determinative fact influencing the courts, and his intention is to be gathered from the language he employed in his will from its beginning to its end. Those rules are so fundamental as

to not require space for the insertion of cases and authorities in support of them. Guided by them, it is by no means clear that the testator intended to confine the operation of the devise now under consideration to only the Caudill Bros. tract. There is, to say the least of it, as much foundation for the conclusion that he intended that devise to operate on the entire farm as that he intended to confine it to only a part of the farm. In the inserted exception, supra, he refers to the property he had in mind as the farm upon which he and his brother resided, but stated that it (where they resided) was bought from Caudill Bros., and, literally speaking, that was true, since the residence in which they resided was situated on that tract. But inasmuch as the remaining portion of the entire tract was but a small quantity of land, and also inasmuch as there was no apparent reason why that small portion should *immediately* form a part of the trust estate, and become disconnected from the farm theretofore occupied by the two and would doubtless thereby become of far less value when so separated, and in view of the further facts that he did not empower his trustee to sell any of the farm or any part of it until the death of his brother, and his reference to the land in the devising clause to his brother as "the farm hereinbefore mentioned," there would appear to be potent reasons, from the language of the original will alone, to conclude that it was the testator's intention to devise to his brother a half interest in the entire tract during the latter's life. But, however that may be, we think the codicil removed all doubt as to his intention in that respect. In it he manifested an emphatic purpose with reference to the devise to his brother of his one-half interest in the whole farm, although some portions of his will should for any cause be held nonenforceable; and he referred therein to the farm in Shelby county "which we own jointly," and said that his brother "is hereby given and bequeathed for and during his life my entire undivided interest in said farm," which necessarily had reference to the language first employed therein, and first inserted above, as the farm in Shelby county that they jointly owned and upon which they resided. The distinct part of that farm known as the "Caudill tract" was nowhere mentioned in the codicil, and it is our conclusion that the court erred in confining the application of the devise to R. Hunter Sanford to only the Caudill Bros. tract, but

should have included therein the entire farm owned and occupied by the two brothers in Shelby county.

Preliminary to a determination of the questions presented by other provisions of the will, it should first be stated that the devisees mentioned therein, Katherine Pendleton, Hunter Smith, Halla Smith, and L. M. Sanford, 3rd, either predeceased the testator or died shortly thereafter, and the benefits or interests attempted to be conferred upon them are eliminated from the case.

It will perhaps be of some assistance to keep in mind some of the elements, characteristics, and essential requisites of that creature in the law known as "express trusts." Contrary to popular acceptation, there is no mystifying glamour or peculiar legal halo surrounding them. They are instruments of human creation gotten up for the better or more perfect administration of the intention of the one creating them, who is designated in the law as "donor," "creator," "founder," "trustor," or "settler"; the latter, perhaps, being the most frequent designation and the one that we will adopt in this opinion. The intention of the settler, as in other cases of voluntarily created obligations, as gathered from the instrument creating the trust if it be in writing, is the first thing for the court to search for and to administer. Also, like other contracts or obligatory declarations, the purpose to be accomplished must be a lawful one. The means by which it is to be done is through another called the "trustee," and to whom the legal title to the property composing the trust estate is transferred with directions for him to use, manage, and appropriate it so as to reap and expend net income, or sometimes expend its corpus in bestowing benefits, either specified or general, on another who is designated in law as the "cestui que trust," and sometimes referred to as the "beneficiary" thereof, in such prescribed form and for such purposes as the settler may designate. They are either public or private, to the latter class of which belongs the one now under consideration. Certain requisites in order to render it enforceable must always exist, chief among which are: "1. The words of the testator must be construed as mandatory. 2. The person intended to be the beneficiary must be certain. 3. The subject to which the obligation relates must be certain." Webster v. Wathen, 97 Ky. 318, 30 S. W. 663, 17 Ky. Law Rep. 32; and, see also, 26 R. C. L. 1183, par. 20, and 39 Cyc. 58, 59, Fidelity Trust &

Safety Vault Co. v. Walker, 116 Ky. 381, 76 S. W. 131, 25 Ky. Law Rep. 591, and other cases and authorities that could be cited, there being none to the contrary.

The required certainty applies to each and all of the named essentials to the creation of a valid trust, and if wanting in either of them the trust will be void for uncertainty and will not be enforced. The certainty, essential to the designation of the beneficiary or beneficiaries, does not require that he or they should be specifically named, since it is sufficient for that purpose if they be members of a class to be benefited by the trust, nor is it essential that the benefits provided for shall be absolute and payable in all events; it being only required that during the existence of the trust the contingency provided by the settler should arise so as to entitle the beneficiary to such benefits for the accomplishment of the designated purpose. But the purpose should not depend upon a contingency so remote and improbable as to render its happening too remote or substantially indefinite; but if the contingency is one that is liable to happen, i. e., one that in human probability might reasonably occur, it is sufficiently certain to preserve the validity of the trust. Such an arrangement for that character of contingent benefits is usually designated as a "power coupled with a trust." See Dudley v. Weinhart, 93 Ky. 401, 20 S. W. 308, 14 Ky. Law Rep. 434; Columbia Trust Co. v. Christopher, 133 Ky. 335, 117 S. W. 943; and Perry on Trusts and Trustees, vol. 1, secs. 248, 250, 251, and 255.

Applying those general principles to the case in hand, we find that the testator provided for a comfortable support for his surviving uncle, Ballard Smith, the measuring whereof he left to the sound discretion of his trustee and which does not destroy the requisite certainty of the benefits bestowable upon that cestui. See authorities supra, and Davidson's Ex'rs v. Kemper, 79 Ky. 5; Louisville Tobacco Warehouse Co. v. Thompson, 172 Ky. 350, 189 S. W. 245; and Suggett's Trustees v. Pirtle, 199 Ky. 713, 251 S. W. 959. Therefore the provision as to the support of that uncle (the other one having died) clearly meets the requirement of a valid trust, and we conclude that the court erred in declaring it invalid. The discretion to be exercised by the trustee in complying with that provision should be measured by the necessities of the beneficiary, considering his condi-

tion, surroundings, and other sources of support, and to contribute thereto the requisite amount to supply any already in existence and in such quantities as to furnish the comfortable support provided for by the terms of the trust. The same may also be said with reference to financial assistance in the education of nephews and nieces of the testator, and if the contingency provided for in the will should arise as to any of them during the usual period of their lives for the acquisition of an education, it would be the duty of the trustee to devote such portions of the trust estate as remained in his hands in assisting such one in obtaining the prescribed education.

Neither are we prepared to say, in view of the foregoing principles, that the final provision of the will, in which the testator directs his trustee to hold this estate in trust "for the benefit of my brothers and sisters and nephews and nieces and their heirs, etc.," is so indefinite and uncertain as to be incapable of enforcement to the extent hereinafter pointed out. The conditions provided against may with reasonable probability happen to some or all of them during the course of their lives, and for that reason, as we have seen, it is not so uncertain as to be void and unenforceable because of being too remote or indefinite. The beneficiaries in such event are capable of being made certain by becoming so conditioned as to require the specified aid and assistance, and because thereof we also conclude that the court erred in rejecting that provision of the testator's will.

But we are equally convinced that the provisions of the will with reference to A. O. Smith, a first cousin of testator, is incapable of enforcement because of uncertainty and indefiniteness, and the court properly excluded him from ever participating or having any interest in the trust. It will be observed that the testator directed that his two cousins (one of whom we have seen has since died) should receive assistance in any legitimate business which may be necessary for their support. Literally interpreted, the language of the will does not require that the beneficiary should engage in any character of business, and whether the testator so intended or not is extremely problematical. The extent of the aid and assistance is also unmeasured and perhaps unmeasureable. The devise in this particular is very analogous to the one we disallowed in the Webster case, supra, and after a painstaking research of the applicable law we have con-

cluded that the court correctly held that provision of the trust to be invalid.

But the testator in this case went beyond the making of certain provisions for his brothers and sisters, and his nephews and nieces, and prescribed that such benefits should be for "their heirs so long as any of them (heirs) are in existence & in the event the family as stated should become extinct then my estate is to be held in trust for the benefit & education of as many orphans of the state of Kentucky as the income thereof will support and educate." Private trusts, such as the one here involved, come within the rule against perpetuties. 39 Cyc. 43; 21 R. C. L. 306, sec. 33, and cases stated in note 5 to that text; and Gray on The Rule Against Perpetuties, secs. 202 and 322-328. The last inserted language from the will clearly offends that rule. The limits of the vesting of the benefits so attempted to be provided for, to be valid as not so offending, is upon the death of the last brother and sister or nephew or niece living at the death of the testator, when the trust will cease, and if any of the property is then unexpended it will be distributed to the then heirs and next of kin of the testator, since the defeat of a preceding beneficiary or class of beneficiaries (because coming within the rule against perpetuties) will not accelerate or preserve an alternative and following one, though it be a public charity of the nature of the one last provided for by the testator in this case. See the work of Mr. Gray, supra, secs. 592-594, and 21 R. C. L. 316, sec. 46. The cited texts state without exception that the fact that a later provision, after a preceding invalid one (because against the perpetuity rule), creates a public charity to which the rule against perpetuities does not apply, does not serve to uphold it and it must also fall with the illegal one that precedes it. Therefore, in this case, all of the property of the testator's estate, if any, remaining after complying with his requests that we have herein upheld, will be undevised property to be distributed as hereinbefore pointed out.

For the reasons stated, the judgment is affirmed in part and reversed in part as herein indicated, with directions to render one in conformity with the principles herein announced.

Whole court sitting.