## Newland v. McNeill.

March 3, 1939.

W. E. BEGLEY, Judge.

246

H. C. CLAY & SONS for appellant.

WILLIAM LEWIS & SON and C. R. LUKER for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—
Modified and as modified, affirmed.

Two sisters, Sue and Elizabeth McNeill, and a brother, George McNeill, had never married and all made their home together in Laurel County in or near the village of Pittsburg, Kentucky. The two sisters were admirable ladies, industrious, frugal, self-sacrificing and intelligent. George was so addicted to the use of liquor that he became a dipsomaniac. Miss Sue worked in the First National Bank of East Bernstadt, a small country bank in Laurel County, and as we gather from the record, Miss Elizabeth also worked in this bank. George had suffered an accident in the mines and another on the railroad, which impaired him physically and this supplemented by his weakness for liquor made a ne'er-do-well of him and he was dependent upon his sisters for support. Miss Sue accumulated considerable property, among which was 140 shares of stock of the bank in which she was employed. She and Miss Elizabeth had a deep affection for George, understood his weakness for liquor was more of a disease than a habit, which invoked their sympathy for him rather than causing any displeasure toward him.

At the time of the death of his sister Sue McNeill, on April 22, 1934, George was about 50 years of age, and for ten or twelve years he had been dependent upon her and his sister Elizabeth for care, attention and support. The record shows George has rheumatism, heart disease, tuberculosis, hemmorrhoids, a severe intestinal disorder and some nervous trouble. Even when he is sober, there are times when he loses absolute control of himself and falls wherever he happens to be, remaining in a prone and semi-conscious condition for hours. After such a seizure he will rise and go to the nearest home of some friend or acquaintance, any hour of the day or night, to gain admittance and oftentimes he cannot speak, and may be confined to bed for several days or a week without control of his organs of elimination. Liquor superinduces and aggravates these at-

tacks but the record shows he suffers them even when he has not partaken of alcoholic beverages. His sisters, with whom George has lived for years, being fully acquainted with his physical affliction and with his excessive use of alcohol, realized that he was not capable, mentally or physically, to earn a living or to care for himself.

On March 3, 1933, Miss Sue transferred on the books of the bank this stock to her nephew, Con B. Newland, and at about the same time she executed in her own handwriting an undated instrument which is as follows:

"I, Sue McNeill, hereby certify that with C. A. Castell and G. W. Cloyd, witnesses, I have assigned to my nephew, Con. B. Newland, 140 shares of bank stock. I want him to take care of my brother, George McNeill, and be good to him as long as he lives, if he should die first then I want my nephew, William Newland to take charge of what there may be of the income and sell all the stock and look after brother George.

"(Signed) S. E. McNeill
"Sue E. McNeill."

Hereinafter this instrument will be referred to as "the paper." It appears from the record she gave George and Miss Elizabeth a copy of this paper about the time she executed it, but Con testified she did not give a copy of same to him and that he had no knowledge of it until the stock was delivered to him in May, 1934. However, Con knew this stock was transferred to his name on the books of the bank because he executed a proxy at Miss Sue's request and the record shows this stock was voted by Miss Elizabeth at a stockholder's meeting held January 9, 1934, by virtue of a proxy signed by defendant. A copy of this paper was attached to the stock certificate which had been issued to Con and both placed in an envelope which had typed on it the following directions:

"Left with the First National Bank, of East Bernstadt, Kentucky, and to be delivered to Con. B. Newland, two weeks after my death."

This envelope was placed in Miss Sue's lock-box in the bank. The William Newland referred to in the paper and in the will, which will be subsequently mentioned, is a brother of Con.

Miss Sue on November 7, 1933, wrote her sister, Miss Elizabeth, an affectionate and touching letter, which was found in Miss Sue's lock-box after her death and was probated as her will. Hereinafter this letter will be referred to as her "will." It contained the following provision relative to George and the bank stock:

"I have endorsed and assigned over all my bank stock to Con B. Newland because he has been so good to me and George and all the family, I have requested him and William to take care of George in sickness or trouble and help him as long as he lives."

The bank stock with the paper attached thereto was delivered to Con after Miss Sue's death, but he regarded the stock as an absolute gift to him from Miss Sue and refused to use any part of it, or the dividends therefrom, for the care and support of George. On September 17, 1937, George brought this suit in equity alleging that by reason of the above quoted part of the will and of the paper attached to the bank stock, the bank stock was impressed with a trust for his support and care and that Con held same as his trustee and only took individually that part of the stock which might not be consumed in supporting and caring for George during his life.

Defendant moved the court to require plaintiff to elect which of these papers he relied upon as the basis of his suit. This motion was overruled by the court and the defendant filed answer. The first paragraph of the answer is a traverse, and in the second paragraph defendant pleaded that immediately before this stock was delivered to him the will was read and when he accepted the bank stock he did not know of the paper attached thereto and that he accepted this stock under the will and not under the paper. The issues were completed by reply and a rejoinder, a large amount of proof was taken and the cause submitted. The chancellor adjudged Con took this stock impressed with a trust for the support and care of George and if the income was not sufficient for that purpose, it was the duty of the trustee to sell a sufficient amount thereof to do so; that as Con had treated this stock as his own and had refused to support George, this was grounds for his removal as trustee and Con was removed as such and ordered to make a settlement and to account for the

stock and the dividends he had collected thereon. William Newland was appointed trustee for George and the judgment recited he might expend approximately $75 per month for the support and care of George, including his board, lodging, clothes, and doctor's bills and necessary expenses; and that the trustee should pay persons having claims against George for necessities furnished him from the death of Miss Sue, upon due proof of their claims.

While the defendant assigns numerous errors for reversal of the judgment, many of them are so closely related that they can be treated under the same heading. Defendant's real grounds for reversal are: (1) The petition does not state a cause of action; (2) plaintiff should have been required to elect upon which of the two writings set out in the petition he based his action; (3) the paper attached to the bank stock should not be considered in determining whether or not a trust was created; (4) that if such paper is considered, it only meant for Con to look after George while he was drunk; (5) that the will required Miss Elizabeth to furnish George all necessities and defendant was thereby relieved of doing so. We will discuss these questions in the order named.

The record does not show defendant filed a general demurrer to the petition. While his failure to do so waives any technical defects in the petition, yet if the petition is fatally defective, its sufficiency may be raised for the first time in this court. Section 93; Civil Code of Practice. Powers v. Hardesty, 250 Ky. 522, 63 S. W. (2d) 616. The petition in quoting from the will used the word "required" instead of "requested" as appears in this clause: "I have requested him (Con) and William Newland to take care of George, etc." In Thomas v. Buck, 236 Ky. 241, 32 S. W. (2d) 1006, we held precatory words addressed to a fiduciary are mandatory although like words addressed to a devisee whose estate is absolute will not be enforced. We will later see Con was a fiduciary and although he never took under the will, the precatory words in the will show the intention of the testatrix was that Con should be required to support George. There can be no doubt about the petition stating a cause of action.

The petition alleged that part of the will previously quoted in this opinion and the paper attached to the bank stock impressed this stock with a trust for the

support of George and that Con accepted the stock with such trust impressed thereon. The bank stock with the attached paper and the will were all produced simultaneously from the lock-box of Sue McNeill. The will was read first and then the bank stock was delivered to Con accompanied by the paper, and as the will referred to the terms of this paper and to the assignment of this stock, we cannot see any reason or logic preventing defendant from basing his suit upon both the will and the paper. They relate to one thing, to-wit, whether or not a trust was created in reference to this stock, or whether it was given to Con absolutely. We are inclined to the opinion that either of these instruments shows a trust was intended—certainly the two construed together do—and that this stock was placed in Con's hands for the use and benefit of George and no part thereof became Con's property except that part which may not be consumed in the support of George.

By his pleading Con claims to have taken this property under the will and not under the paper. He evidently makes this contention in the hope of having himself declared under the will to be the absolute devisee of this stock so that the precatory word "request" could not become mandatory upon him. But under the facts in this case we doubt the sufficiency of the will to dispose of this stock because the stock was transferred to Con on the books of the bank, March 3, 1933, which was more than eight months before the will was written. Again, the will uses the past tense, "I have endorsed and assigned * * * I have requested him and William to take care of George," evidencing testatrix realized she had previously transferred this stock to Con and that no attempt was made to dispose of it by her will. It is clear Con took this stock under the paper attached thereto and that he accepted the conditions therein. Let us see what those conditions were. It states:

"I have assigned to my nephew, Con B. Newland, my 140 shares of bank stock and I want him to take care of my brother George McNeill and be good to him as long as he lives. If he should die first (Con) I want my nephew, William Newland, (Con's brother), to take charge of what there may be (left) of the income and sell all the stock and look after brother George."

This language is unambiguous and Sue McNeill so expressed herself therein that no person understanding

the English language could doubt she intended to put this bank stock in trust for the use and benefit of George. By this paper Miss Sue created an express trust in favor of George. Sandford's Adm'r v. Sandford, 230 Ky. 429, 20 S. W. (2d) 83, 87, says as to express trusts:

"Certain requisites in order to render it enforceable must always exist, chief among which are: '1. The words of the testator must be construed as mandatory. 2. The person intended to be the beneficiary must be certain. 3. The subject to which the obligation relates must be certain.'" (Citation of authorities.)

As we have previously shown, this paper complies with all three of the requisites mentioned in the Sandford case.

The fact that the testatrix retained the right to vote this stock, by requiring Con to execute the proxy above mentioned, and the fact that she kept the stock certificate in her lock-box after same was transferred on the books of the bank to Con did not prevent the trust from taking effect. 65 C. J. 275, Section 56; 26 R. C. L. 1206. In Cleveland Trust Company v. White, 134 Ohio St. 1, 15 N. E. (2d) 627, 118 A. L. R. 475, it was held when the trustee executed to the donor an instrument vesting in the donor the voting power of the stock held in trust, the trust was not violated; nor did the failure of the donor to transfer the certificates on the books of the corporation, issuing the trusteed stock, invalidate the trust. An annotation follows the White case in 118 A. L. R. 482, discussing the power of the donor to retain some control over the property put in trust.

The defendant contends the paper meant for him to only look after George while drunk and put no obligation upon him to support and furnish George with the necessities of life. To state this proposition is to answer it, and we will not consume time in a discussion thereof, except to say George was incapable of supporting himself and the very purpose of the trust was to provide for his support and care.

Defendant's next contention is that as the will requested Miss Elizabeth to continue to be kind to George, and to furnish him necessities but not to give him money, the burden was placed on Miss Elizabeth for

George's care and support and Con was relieved thereof. Had this section of the will been mandatory on Miss Elizabeth, instead of being merely precatory as she was the absolute devisee, even then Con would not be relieved of the obligation to furnish George with a comfortable living as provided in the paper creating the trust. The law did not limit Miss Sue in establishing only one trust for George. Had she so desired, she could have established several trusts for his benefit and each would have been as binding upon the trustee it named as though no other existed.

There are a great number of written exceptions filed to the deposition of the plaintiff. However, neither counsel pointed out to us in their briefs the grounds upon which these exceptions were taken to the evidence, and we will not search the record in an attempt to discover upon what grounds such evidence might be incompetent. An attorney cannot submit to this court a great number of exceptions to the evidence with the mere statement that such evidence is incompetent and expect us to search through the record and discover grounds upon which the exceptions might be sustained.

The chancellor was correct in adjudging this paper put this stock in Con's hands as trustee for George and that Con had violated the terms of the trust and should be removed as trustee and required to account for this stock and the dividends received thereon. From the record it appears there is some controversy as to the amount of the dividends Con collected; however, proof can be heard on this question when Con makes his settlement and he will be required to account for all dividends he collected on this stock with interest from the date he collected same. The chancellor adjudged the present trustee may expend "approximately $75.00 per month for the support, and care (of George) including his board, lodging, clothing, doctor's bills and necessary expenses." We hereby make this slight modification in this part of the judgment so it will read:

> "The trustee of George McNeill will furnish him with proper support and care including board, lodging, clothing, doctor's bills and necessary expenses not to exceed $75.00 per month, unless in case of emergency, a judgment of the Laurel Circuit Court is obtained, authorizing him to expend in excess of this sum."

254

Any person having claims against George for necessities furnished him since the death of the testatrix must duly prove them according to law and may present same for payment to his present trustee, who should scrutinize these claims with great care and seek the advice of the court on any of them about whose genuineness he entertains any grave doubt.

Perceiving no error in the chancellor's judgment, the same is hereby affirmed, with the modification indicated.